**BELL et al. v. UNITED STATES et al.**
No. 315.

District Court, E. D. Louisiana.

March 17, 1943.

Thomas L. Philips, of St. Louis, Mo., Andrew J. Dallstream, of Chicago, Ill., and Baldwin, Haspel, Molony & Lang, of New Orleans, La., for Celotex Corporation.

Spencer, Phelps, Dunbar & Marks, Dufour, St. Paul & Levy, Milling, Godchaux, Saal & Milling, and Denegre, Leovy & Chaffe, all of New Orleans, La., for Railroads.

Before HOLMES, Circuit Judge, and KENNERLY and BORAH, District Judges.

BORAH, District Judge.

For the history of this litigation prior to the suits for restitution now before us, see Pan-American Petroleum Corporation v. United States, D.C., 18 F.Supp. 624; United States v. Pan-American Petroleum Corporation, 304 U.S. 156, 58 S.Ct. 771, 82 L.Ed. 1262. The present proceedings are incidental to and a part of the main suit. The four defendant railroads (hereinafter named) have now filed petitions for restitution to compel plaintiff, the Celotex Corporation, the successor in interest to the Celotex Company and to Colin C. Bell, et al., as receivers of the Celotex Company (hereinafter called Celotex), and Maryland Casualty Company, surety on the bond heretofore filed herein by plaintiff, to restore to defendants the amounts heretofore paid to plaintiff as allowances for its services in spotting cars in its plant. The facts are not in controversy; only their interpretation is at issue. The question presented is whether the circumstances hereinafter related are such that equitably the plaintiff should restore to the defendants what it has received. From the stipulated facts we derive these as essential to a disposition of it:

Findings of Fact.

1. Celotex Corporation owns and operates a plant for the manufacture of Celotex board, manufactured principally from bagasse, the dried refuse of sugar cane. The plant is located at Marrero, Louisiana, and is served by the defendant railroads.

2. For some time prior to the year 1935, in fact in the year 1926, Celotex and the railroads here involved, recognizing that the railroads were obliged to perform certain switching or spotting services within the confines of the Celotex Plant under the line-haul rate, agreed that Celotex would take over this work at the interchange

tracks or switching point. For such services the railroads paid Celotex $1 per loaded car, believing that to be a proper allowance. Appropriate tariffs providing for such payment were filed with the Interstate Commerce Commission.

3. Thereafter upon its own motion the Interstate Commerce Commission instituted an investigation known as "Ex Parte No. 104, Practices of Carriers Affecting Operating Revenues or Expenses, Part II Terminal Services". This investigation included the practice at the Celotex Plant. In its Twenty-Third Supplemental Report and Order of July 11, 1935, the Commission found that the payment of the switching allowance to Celotex was illegal and in violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and the railroads were ordered and directed to cease and desist on or before September 3, 1935, and thereafter abstain from such unlawful practice.

4. In accordance with said order of the Commission the defendant railroads promulgated and duly filed with the Commission their supplemental tariffs cancelling the provisions for payment of said allowances. On August 19, 1935, upon petition of plaintiff, this court, three judges sitting, granted an interlocutory injunction by which the Commission's report and order were "suspended, stayed, and set aside, pending the further order of the court"; the Commission was restrained and enjoined from enforcing them, and the railroads having previously given public notice that their published tariffs providing for the allowance would be cancelled as of September 3, 1935, in compliance with the Commission's order, the injunctions suspended the effective date of the cancellation. The interlocutory injunction also provided "that plaintiff shall immediately execute and file a bond in the sum of $5,-000 to be approved by one of the judges of this court, conditioned that plaintiff will pay to the defendants such sum as this court may deem is proper if this interlocutory injunction is dissolved."

5. On April 28, 1937, after hearing on the merits, this court entered its decree permanently enjoining, setting aside and annulling the order of the Commission. On April 25, 1938, the Supreme Court approved the order of the Commission and reversed the decree of this court. On May 23, 1938, this court vacated its prior decree and entered its final decree herein dismissing the original bill of complaint.

6. Thereafter on May 30, 1938, this court made and entered an amendment to its final decree retaining jurisdiction of this cause to entertain any proceedings which might be instituted by any interested party for restitution, or the assessment of damages, or for relief upon the bond heretofore filed herein, and for the making of any and all further orders and decrees which the court may find to be appropriate and proper.

7. During the period from September 3, 1935, to May 23, 1938, Celotex continued to perform the pick-up and delivery switching service heretofore referred to, and the railroads continued to pay the allowances by virtue of the injunction issued by this court.

8. After the Commission's order became effective, by reason of the vacation of the injunction previously issued by this court, the railroads cancelled the tariffs covering the terminal switching allowances theretofore paid by them to Celotex, and subsequent to June 4, 1938, and to and including August 31, 1939, Celotex performed the switching or spotting services without the payment by the defendants for any allowance therefor.

9. September 1, 1939, the railroads at the request of Celotex undertook the switching and assessed against Celotex charges for such services as provided in their tariffs.

10. September 15, 1939, Celotex applied to the Commission for a reopening and reconsideration of its Twenty-Third Supplemental Report and Order of July 11, 1935, which request was granted on November 13, 1939. After further hearings, at which additional testimony was heard and various exhibits were filed, the Commission, on April 17, 1941, vacated and set aside the order of July 11, 1935, and found that the switching performed by the railroads was a service which might fairly be regarded as contemplated under the carriers' line-haul rates.

11. During the period beginning with the effective date of the original Twenty-Third Supplemental Order of the Commission, to-wit, September 3, 1935, and ending May 23, 1938, the defendant Texas and New Orleans Railroad Company (for brevity hereinafter called T. & N. O.) paid to Celotex or its predecessors in interest

the total amount of $8,533. Of this amount $998 was paid by T. & N. O. on account of allowances on carload traffic moved between September 3, 1935, and January 17, 1936, the date on which the railroads entered into a subsequent contract under the terms of which they specifically granted to each other the right to use their respective tracks, so that each, with its own equipment, could serve the Celotex Plant as well as the adjoining Johns-Manville Plant, using the cross-over constructed in 1926.

12. During the period beginning September 3, 1935, and ending May 23, 1938, the defendant Texas-Pacific-Missouri-Pacific Terminal Railroad of New Orleans (for brevity hereinafter called the Terminal Company) paid to plaintiff allowances in the total sum of $3,835, which amount was paid for the respective accounts of said defendants as follows:

| | |
|---|---|
| Terminal Company | $1001.00 |
| Texas & Pacific Railroad Company (for brevity hereinafter called T. P.) | 2650.00 |
| L. W. Baldwin and Guy A. Thompson, Trustees of Missouri-Pacific Railroad Company, or Guy A. Thompson, successor Trustee (for brevity hereinafter called M. P.) | 184.00 |

The T. P. and the said trustee or trustees of M. P. subsequently reimbursed the Terminal Company in the sums paid for their respective accounts. Of said sum of $3,835, the amount of $449 was paid to Celotex on account of allowances on carload traffic which moved between September 3, 1935, and January 17, 1936. $268 of this amount of $449 was paid by the Terminal Company for account of T. P. and $51 of said amount of $449 was paid by the Terminal Company for account of M. P.; and T. P. and M. P. reimbursed the Terminal Company in the sums paid for their respective accounts. The balance of $130 was paid by the Terminal Company for its own account.

13. During the period from June 1, 1938, and ending August 31, 1939, Celotex performed the car spotting, pick-up and delivery service to and from points of loading and unloading within its plant on a total of 3,186 cars received from or delivered to the Terminal Company for its own account and for account of T. P. and M. P., all such services having been performed by Celotex without compensation therefor by way of allowance or otherwise.

13. During the period from June 1, 1938, to and including August 31, 1939, Celotex performed car spotting, pick-up and delivery service to and from points of loading and unloading within its plant on a total number of 4,363 cars received from or delivered to T. & N. O., all such services having been performed by Celotex without compensation therefor by way of allowance or otherwise.

### Discussion.

■■ In its Twenty-Third Supplemental Report the Commission found that, in the circumstances disclosed at the Celotex plant, the railroads' obligation of delivery was fulfilled by placing or receiving cars at the interchange tracks and that the moving and spotting of cars in the plant formed no part of the service covered by the line-haul rate. It concluded that the practice of making an allowance out of the rate to Celotex for the performance of the spotting service was illegal and in violation of the Interstate Commerce Act and should be discontinued. In this the exercise of its primary jurisdiction, the Commission acted under its statutory duty as the representative of the interest which shippers generally, the public, as well as the railroads, have in the maintenance of fair, reasonable and non-discriminatory transportation practices. It did not exceed the powers conferred upon it by the Act, and its findings and conclusions were approved by the Supreme Court. When this court obedient to the mandate of the Supreme Court vacated its prior decree and entered its final decree herein dismissing the original bill of complaint, it thereby found the Commission's report and order valid, and they were then in effect as though the injunction had never been granted. Such being the situation it follows that the sums paid to Celotex as allowances during the unwarranted period of suspension were paid in violation of the Commission's order and that this court should correct what has been wrongfully done by ordering plaintiff to restore the unlawful payments to their lawful owners. Inland Steel Company v. United States, 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557.

■ The fact that Celotex applied to the Commission for a reopening and reconsideration of its report and order of July 11, 1935, and that the Commission granted the request, and finally on April 17, 1941, vacated and set aside the order of July 11, 1935, does not alter in the least the

508

legal situation, for the prior order remained in full force and effect up to the effective date of the subsequent order. The Commission clearly intended that the order of April 17, 1941, should operate prospectively, and Celotex apparently concedes the point, for it disclaims any intention of arguing that the 1941 order of the Commission was intended to be retroactive.

The contention of Celotex is simply that the Commission's 1935 order should not have been issued in the first place; that Celotex was wholly reasonable and justified in seeking the injunction which it obtained from this court; and that the Commission's 1941 order recognized the fairness of the position that Celotex has asserted from the beginning. In support of this contention Celotex insists (1) that the railroads have been obliged since 1926 down to the present time to perform the spotting service without extra charge over and above the line-haul rates, and (2) that the Commission in effect reversed itself on rehearing. On the basis of these facts it is urged that this suit falls squarely within the doctrine enunciated by the Supreme Court in Atlantic Coast Line Railroad Company v. Florida, 295 U.S. 301, 310, 55 S. Ct. 713, 79 L.Ed. 1451, and that this court should not order restitution because the justice of the case does not call for it.

We do not agree with plaintiff. The first point urged upon us is not open to plaintiff and is clearly without merit. With respect to the second point we simply say that in its petition requesting the Commission to reopen and reconsider its Twenty-Third Supplemental Report and Order, plaintiff recognized that the present conditions at the plant were generally and materially different from the conditions existing in 1932, and the changed circumstances and conditions were set forth in detail. This was the theory upon which plaintiff presented its application to the Commission, and the Commission's report on rehearing clearly shows that the Commission based its conclusions not on the theory that the original order of July 11, 1935, was wrong, but on the belief that the case presented by the record made up on rehearing was different from the case originally presented.

The railroads are entitled to restitution. The order of the Commission should not have been enjoined in the first instance. As a result of the issuance of the injunction found improvident by the Supreme Court, the railroads were compelled to continue the payments which the Commission had found unlawful. To permit Celotex, who enjoyed for nearly three years the suspension which it had sought of the Commission's order, to be the beneficiary of unlawful payments, whereas other industries similarly situated would receive no allowances because they did not obtain an injunction but at all times complied with the valid order of the Commission, would defeat the purposes of the Act.

### Conclusions of Law.

Accepting as we must the Commission's finding that an illegal practice existed at the Celotex plant that involved the unlawful payment of allowances from the railroads' funds, contrary to the public interest, we conclude that plaintiff should not be permitted to retain payments forbidden by law, and that plaintiff should restore to the defendants what it has unlawfully received.

There should be judgment as prayed for in favor of the defendant railroads and against the plaintiff, Celotex Corporation, and the Clerk is instructed to enter judgment accordingly.