**PANHANDLE EASTERN PIPE LINE CO. et al. v. FEDERAL POWER COMMISSION et al.**

**No. 12466.**

Circuit Court of Appeals, Eighth Circuit.

April 5, 1946.

RIDDICK, Circuit Judge, dissenting.

———◇———

John S. L. Yost, of Chicago, Ill., for Panhandle Eastern Pipe Line Co.

Lambert McAllister, Sp. Counsel, Federal Power Commission, of Washington, D. C., James H. Lee, Asst. Corp. Counsel, City of Detroit, and Harold Goodman, Sp. Asst. Pros. Atty., Wayne County, Mich., both of Detroit, Mich., and James W. Williams, Asst. Atty. Gen., Michigan Public Service Commission, for respondents.

J. Francis Hayden, Sp. Asst. to the Atty. Gen., for the United States of America.

Warren Henry, Staff Member of Illinois Commerce Commission, of Chicago, Ill., for Commission.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The Panhandle Eastern Pipe Line Company (which will be referred to as "Panhandle"), in its response to the order to show cause issued on December 12, 1945, has asked that the stay order entered by this Court on December 7, 1942,[1] be modified so as to relieve Panhandle of the expense of distributing to ultimate consumers funds impounded under the stay order.

---

[1] [Stay Order]
"This matter comes before the Court upon the petition of petitioners for an order of stay of the order of the Federal Power Commission, dated September 23, 1942, requiring reduction in rates and charges for gas furnished by petitioners; the pleadings filed thereto; the reply of the petitioners; various memoranda presented by the parties; and oral presentation by Mr. Glenn W. Clark and Mr. D. H. Culton for petitioners, Mr. Harry S. Littman for the Commission, Mr. Harold Goodman for Wayne County, Mr.

The stay order was granted upon the application of Panhandle, which was seeking a review and reversal of the order of the Federal Power Commission dated September 23, 1942, which directed Panhandle to reduce by about five million dollars per annum its rates for the transportation and sale of natural gas in interstate commerce for resale. While the question presented by Panhandle in its petition for review of the order of the Commission justified the granting of a stay upon appropriate conditions (Russell v. Farley, 105 U.S. 433, 438, 26 L.Ed. 1060), it developed that the challenged order of the Commission was not invalid. Panhandle Eastern Pipe Line Co. v. Federal Power Commission, 8 Cir., 143 F.2d 488, affirmed 324 U.S. 635, 65 S.Ct. 821.

This Court is now confronted with the problem of distributing impounded funds of approximately twenty-five million dollars, representing overcharges collected by Panhandle from distribution companies during the impounding period. Most of these distributors, which bought gas at wholesale from Panhandle and sold it at retail to ultimate consumers, have disclaimed any interest in the funds impounded and have agreed that so much of the funds as was derived from the sales of gas to them by Panhandle belongs to their customers. The expense of distributing the impounded funds to the ultimate consumers of gas purchased from these distributors will be large. It is estimated that it will exceed one million dollars, and conceivably may run into higher figures. This Court, before attempting any distribution of the funds, must determine whether the entire expense of distribution shall be borne by Panhandle, as contemplated by the stay order, or whether all or part of the expense shall be paid out of the impounded funds.

The condition of the stay order which Panhandle contends should be modified reads as follows: "The entire expenses of impounding (including, among other things, protecting, investing and distributing to

James H. Lee for the City of Detroit, and Mr. Park Chamberlain for Michigan Consolidated Gas Company.

"Until further order of this Court, the above order of the Federal Power Commission is stayed upon the conditions following:

"1. The monthly difference between payments to petitioners under existing rates or arrangements and those required under the order of the Commission shall be promptly paid over to John G. Hughes of Kansas City, Missouri, as the custodian of this Court, not later than the twenty-fifth of the succeeding month, to be held by him for the benefit of the ultimate consumers or of petitioners as in this litigation may be determined entitled thereto. Such payments for months prior to this order shall be made by December 15, 1942. Triplicate receipts for each of such payments shall be given petitioners by the custodian, one of which shall be promptly filed, by petitioners, with the Clerk of this Court and one with the Federal Power Commission.

"2. The entire expenses of impounding (including, among other things, protecting, investing and distributing to petitioners or to ultimate consumers) of these funds shall be borne by petitioners. Whether any earnings on such funds (while so impounded) may be applied upon such expenses is reserved for future determination. When and as required by orders of this Court, petition-ers shall pay to the custodian such expense money, upon triplicate receipts, which shall be filed as above.

"3. No interest shall be charged petitioners upon such impounded funds unless allowed upon application hereafter made by respondents or any of them. Such future applications may be made only (a) if and when petitioners fail to be ready to present this review upon the merits on May 14, 1943 (as set for hearing by a separate order entered as of this date), or (b) if and when this Court shall enter its decree or order sustaining the above order of the Commission and shall deny any petition for rehearing which may be filed thereto. Any interest allowed hereafter shall be at the rate of four percentum annually from the date of such allowance or thereafter as required by any orders of allowance.

"4. Full power and jurisdiction is reserved to cancel or modify this order and to enter any other orders (with or without application of the parties) to protect or to promote the rights and interests of the parties to this litigation and of the ultimate consumers financially interested in the impounded funds.

"It is further Ordered that the Clerk of this Court is directed to transmit a copy of this order to each of the parties to this proceeding or to their above counsel.

"December 7, 1942."

petitioners or to ultimate consumers) of these funds shall be borne by petitioners. Whether any earnings on such funds (while so impounded) may be applied upon such expenses is reserved for future determination. When and as required by orders of this Court, petitioners shall pay to the custodian such expense money, upon triplicate receipts, which shall be filed as above."

Panhandle argues that the condition is invalid and inequitable in so far as it imposes upon Panhandle any expense of distribution of the impounded funds to ultimate consumers. This argument is based largely upon the case of Central States Electric Co. v. City of Muscatine, 324 U.S. 138, 65 S.Ct. 565, the implications of which Panhandle believes indicate that this Court lacked jurisdiction to impose upon Panhandle the burden of the expense of distributing these funds to persons with whom it had no contractual relations and from whom it collected no part of the overcharges impounded. The implications drawn by Panhandle from the Central States case relative to the power of this Court to condition the stay order as it did are, we think, unjustified in view of what the Supreme Court has ruled in Russell v. Farley, supra, 105 U.S. 433, 438, 443, 26 L.Ed. 1060; Meyers v. Block, 120 U.S. 206, 214, 7 S.Ct. 525, 30 L.Ed. 642; Inland Steel Co. v. United States, 306 U.S. 153, 156-158, 59 S.Ct. 415, 83 L.Ed. 557; and United States v. Morgan, 307 U.S. 183, 191, 193, 194, 197, 198, 59 S.Ct. 795, 83 L.Ed. 1211.

In the Inland Steel case, 306 U.S. at pages 156, 157, 59 S.Ct. at page 417, 83 L.Ed. 557, the Supreme Court said:

"A Court of equity 'in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposes to act. The power to impose such conditions is founded upon, and arises from, the discretion which the court has in such cases, to grant, or not to grant, the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercised from time immemorial.'

"In the exercise of its discretion, the District Court imposed conditions in its decree granting appellant's petition for an interlocutory injunction. Appellant neither objected to the conditions nor sought review of the Court's action in imposing them, but under the interlocutory injunc-

tion enjoyed for three years the suspension —which it has sought—of the Commission's order, pending litigation. Now, the litigation ended, appellant insists that the District Court lacked jurisdiction to do more than vacate its interlocutory injunction and dismiss the petition, since no pleadings of the Railroad or the Commission sought the creation of the special allowance account. But this overlooks the governing principle that it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect."

In the Morgan case, 307 U.S. at pages 193, 194, 59 S.Ct. at page 801, 83 L.Ed. 557, the Court said: "* * * In taking the payments into custody it [the district court] acted as a court of equity, charged both with the responsibility of protecting the fund and of disposing of it according to law, and free in the discharge of that duty to use broad discretion in the exercise of its powers in such manner as to avoid an unjust or unlawful result. It entered into no contract or understanding with the litigants; it entered into no undertaking as to the manner of disposing of the fund; its duty with respect to it is that prescribed by the applicable principles of law and equity for the protection of the litigants and the public, whose interests the injunction and the final disposition of the fund affect. Inland Steel Co. v. United States, supra."

At the time the stay order was entered in this cause, this Court, of course, realized that the impounded funds would be made up of alleged overcharges collected by Panhandle from distributors; that all of such excess charges would be paid to Panhandle by the distributors, but that virtually all of the charges would be collected by the distributors from their retail customers; and that, if the order of the Commission was valid, most of the impounded funds would have to be distributed by the Court to the ultimate consumers. It is apparent that this Court, in conditioning the order granting the stay, gave due consideration to the question whether Panhandle should be required to pay interest upon the alleged overcharges impounded, and whether, if they were finally to be distributed to ultimate consumers, Panhandle should bear the expense of distribution. The stay order shows that the Court concluded that Panhandle should bear the ex-

pense of distribution, but should not—unless thereafter ordered by the Court—be required to pay interest on the funds impounded, and that the Court should reserve for future determination the question whether the earnings of the funds should be applied to the distribution expense. The order of December 7, 1942, stated the terms and conditions upon which this Court was willing to grant to Panhandle a stay of the order of the Commission during the pendency of this cause. These terms and conditions, we think, were reasonable. They were acceptable to, and were accepted by, Panhandle. We cannot believe that this Court abused its discretion in requiring that Panhandle hold harmless the ultimate distributees of these funds from the costs and expenses attributable to the granting of the stay which Panhandle sought and which this Court could have denied. Moreover, a requirement that Panhandle pay interest on the alleged overcharges while they were being impounded might well have been more burdensome than the requirement that it pay the expenses of distribution.

■ It is contended, however, that it would be inequitable to enforce the challenged condition of the stay order. There is, we think, no adequate basis for a conclusion that the expenses of distribution will be so great as to justify this Court in relieving Panhandle of the obligation imposed by the stay order, to pay them. The impounded funds, which have been invested in short-term Government securities bearing interest at less than one per cent, have produced very substantial earnings. These earnings and any future earnings should, we think, be applied against the expenses of distribution which this Court must necessarily incur in disposing of the funds. This conclusion is based upon the practical consideration that if the present and future earnings were not applied upon expenses of distribution, the delay and expense involved in calculating the trifling amount which would be added, out of the earnings, to the share of the impounded funds belonging to each of the several million consumers, would more than offset any possible benefit to them. We think that to apply the earnings of the funds to the expense of distributing them will be to expedite and simplify the distribution, to the advantage of the distributees. The stay order will be modified so as to provide for the application of earnings to the expenses

of distribution. The Court will at all times welcome any suggestions from Panhandle as to means or methods for keeping down such expenses.

Except as indicated herein, the prayer of Panhandle for a modification of the stay order is denied.

Note: Judges STONE and JOHNSEN, of this Court, who, with the late Judge Van VALKENBURGH, entered the stay order of December 7, 1942, sat with the Court at the hearing on Panhandle's request for a modification of the order, but in an advisory capacity only.

RIDDICK, Circuit Judge (dissenting).

In the Natural Gas Act, 15 U.S.C.A. § 717 et seq., Congress dealt only with rates for natural gas transported and sold in interstate commerce for resale to ultimate consumers. Provision for conforming local rates at retail to a reduction in wholesale rates ordered by the Federal Power Commission was left to State legislative power. During the accumulation of the fund in court there has been no exercise of this power over local gas rates in any of the States in which Panhandle gas has been distributed at retail. The fund in court is money paid in by Panhandle which, but for the stay order, would have been retained by the distributors of gas at retail who purchased it from Panhandle at wholesale. The fund may, therefore, be regarded as the accumulation of payments made by these distributors, which, in turn, have collected the money from their retail customers under local rates established by State authority, lawful when the collections were made and throughout the period of the accumulation of the fund in court.

It follows that the fund is in law the property of the distributors in the proportion in which they contributed to it. Panhandle has received the fund from the distributors in violation of the order of the Federal Power Commission, and is by law obligated to return it to them. The purpose of impounding the fund in the hands of the court was to insure that this legal obligation of Panhandle would be promptly met in the event the order of the Federal Power Commission was sustained by the courts. During the accumulation of the fund Panhandle has never been under any enforceable legal obligation to the customers of the distributors, nor does such an obligation now exist.

All agree that the consumers of gas at retail ought to have the benefit of a reduction in wholesale rates, since the local rates are, to a large extent, measured by wholesale rates. Whatever right the ultimate consumers of gas may acquire to share in the benefits of the reduction in wholesale rates is enforceable against the distributors and not against Panhandle, and in the courts of the States in which Panhandle gas is distributed and not in this court. Moreover, so far as this court is presently advised, the ultimate consumers do not now possess a legally enforceable claim against the distributors from whom they have purchased Panhandle gas at lawful retail rates.

If now the distributors and their customers, by agreement among themselves, decide that the share in the fund allotted to any distributor may be distributed among its customers, the ultimate consumers, the expense of such a distribution may not be imposed upon Panhandle. The same result follows if reparation orders of State regulatory commissions are made against distributors to prevent the receipt by them of a windfall as a result of the reduction of wholesale rates. Under either arrangement the expense of distribution must be paid from each consumer's share in the fund in the court, unless by agreement it is assumed by the distributors or imposed upon them by some State authority, the existence of which is not now apparent to say the least. The expense of a distribution to ultimate consumers may not, in my opinion, be imposed upon Panhandle.