SUNBEAM CORPORATION, PLAINTIFF-RESPONDENT, v. WINDSOR-FIFTH AVENUE, INC., A NEW YORK CORPORATION AND WINDSOR-FIFTH AVENUE, INC., A NEW JERSEY CORPORATION, DEFENDANTS-APPELLANTS.

Argued October 26, 1953—Decided December 21, 1953.

See also 14 *N. J.* 235, 102 *A. 2d* 32.

224

*Mr. Edward J. O'Mara* argued the cause for the appellant (*Mr. Murray G. Simon,* attorney).

*Mr. Thomas J. Brogan* argued the cause for the respondent (*Mr. Herman T. Van Mell* of the Illinois Bar, and *Mr. George M. Chapman,* of the New York Bar, of counsel).

The opinion of the court was delivered by

BURLING, J.   This appeal brings before us for review an order for an interlocutory injunction entered in favor of the plaintiff, Sunbeam Corporation (hereinafter called Sunbeam); against the defendants, Windsor-Fifth Avenue, Inc., a New York corporation and Windsor-Fifth Avenue, Inc., a New Jersey corporation (hereinafter collectively referred to as the defendants), on May 8, 1953 in the Superior Court, Chancery Division, in an action brought by Sunbeam against the defendants for enforcement of rights under resale price maintenance agreements (to which the defendants were not parties) made by Sunbeam under the Fair Trade Act of New Jersey (*R. S.* 56:4-3 *et seq.,* as amended).   The defendants' appeal was addressed to the Superior Court. Appellate Division, and prior to hearing there was certified on our own motion.

The pleadings in this cause show without dispute that the plaintiff Sunbeam is an Illinois corporation having its principal office and place of business in Chicago, Illinois, and that the defendants (both having the same corporate name) are corporations, one a New York corporation authorized to do business in New Jersey, and the other a New Jersey corporation.   The pleadings also show without dispute that the defendants maintain and operate stores in the

municipalities of Harrison, Wallington, Maywood, Camden, Asbury Park, Union City, Elizabeth and Fords, all in the State of New Jersey, in which the defendants are engaged in the business of selling at retail electrical appliances (of many types) including items manufactured by Sunbeam and bearing Sunbeam's name and trade-marks.

The controversy exhibited by the allegations of the complaint and the denials and defenses contained in the answer demonstrate that there are involved disputed issues of fact and law remaining to be determined at the final hearing of this cause. It suffices to state that the plaintiff's suit is premised upon its resale price maintenance agreements with New Jersey retailers and distributors and seeks the remedies of injunction and accounting to such extent as Sunbeam may be entitled thereto under the Fair Trade Act of New Jersey, *R. S.* 56:4–3 *et seq.*, as amended *supra*, The Miller-Tydings Act (see 15 *U. S. C. A.* 1) and the McGuire Act (*P. L.* 542, 82*nd Congress, 2nd Session, c.* 745, July 14, 1952). No question is asserted on this appeal concerning the constitutionality of these enactments, or any of them, nor concerning the operative effect of the New Jersey Fair Trade Act in relation to interstate commerce. See *General Electric Company v. Packard Bamberger & Co., Inc.,* 14 *N. J.* 209 (1953), wherein the effect of the McGuire Act, *supra,* has been determined by us as having affected removal of the obstacle (of the federal anti-trust acts) to operation of the New Jersey Fair Trade Act upon interstate commerce.

This action was instituted by Sunbeam by complaint filed January 9, 1953. It was brought on for hearing in the Superior Court, Chancery Division, on the return of an order directing the defendants to show cause why interlocutory relief should not be granted to Sunbeam. The trial court, on May 8, 1953, entered an order wherein it was determined (on the pleadings and affidavits filed by the parties) that the defendants were "openly and wilfully offering for sale and selling products bearing plaintiff's trademarks for less than the minimum prices established by plaintiff's retail fair trade contracts, of which defendants

have full and ample notice," that defendants would continue so to do unless restrained and irreparable injury would thereby ensue to the plaintiff. The defendants do not attack this portion of the order on the present appeal and therefore no consideration thereof on the merits is warranted here.

The order of May 8, 1953, *ante*, as a consequence of the above recited findings therein set forth, ordered the defendants restrained, pending final determination of the action, "from advertising for sale, offering for sale or selling any commodities bearing plaintiff's trademarks or name at prices less than those stipulated in plaintiff's fair trade contract now in effect with retailers of electrical appliances in the State of New Jersey or at prices less than the minimum resale prices set forth in plaintiff's current retail price list furnished by plaintiff to defendants from time to time while such fair trade contracts are in force and effect." The defendants do not appeal this portion of the order.

The questions involved in this appeal are addressed to portions of the order of May 8, 1953 included (emphasis supplied for identification of the portions to which the appeal is addressed) in the following excerpts therefrom:

"And it is FURTHER ORDERED that in the event the defendants shall elect to close out their stock of goods bearing plaintiff's trade-marks for the purpose of discontinuing delivering any of such commodities, then and in such event the foregoing injunction shall be deemed modified to permit such close-out sale under the following terms and conditions:

✻    ✻    ✻    ✻    ✻    ✻    ✻    ✻

2. Defendants shall give plaintiff at least 10 days' written notice (served on counsel for plaintiff) of the date on which it intends to commence such close-out sale to the public, *and in and by such notice shall offer to resell to plaintiff or its nominee or nominees their entire stock of commodities bearing plaintiff's trade-marks at defendants' original invoice prices, for cash upon delivery; defendants shall further tender to plaintiff's representatives the original invoices establishing such invoice prices for examination and shall permit plaintiff to make photostatic copies of the same if plaintiff so desires, and to examine and verify the inventory of merchandise in the warehouse and places of business of defendants, which tender of the invoices and of the right to verification shall be made contemporaneously with the giving of notice of defendants' intention to close out their stock of plaintiff's merchandise;*

3. In the event that plaintiff shall fail to act upon such notice and to accept in writing any such offer of defendants, to repurchase or cause to be repurchased defendants' entire stock of commodities bearing plaintiff's trade-marks within 10 days of its receipt of such notice, then and in such event

\* \* \* \* \* \* \* \*

(c) *That the said close-out sale be concluded within 60 days from the date of commencement thereof and notice of such completion be filed with the Court;*

\* \* \* \* \* \* \* \*

(e) *That defendant shall permit the plaintiff or its duly authorized representatives, from time to time as may be reasonable, to inspect the premises of defendants in order to determine whether defendants possess any of the appliances manufactured by plaintiff and bearing its said trademarks.*

\* \* \* \* \* \* \* \*"

The defendants as hereinbefore noted appealed the order of the Superior Court, Chancery Division, entered May 8, 1953, to the Superior Court, Appellate Division, and certification prior to hearing there was allowed on our own motion.

The question involved in this appeal is whether the aforesaid order validly imposed certain restrictions on "close out" sale by the defendants of plaintiff's trademarked products, namely, (1) the requirement that the defendants resell the property to the plaintiff at original invoice prices, (2) the limitation of 60 days placed on the "close out" sale, and (3) the permission accorded the plaintiff to enter upon the defendants' premises and make inspections of invoices and inventories.

The first point to be considered in relation to the question involved is the plaintiff's contention that the defendants are not clothed with the protection of the so-called "close out" provision of the New Jersey Fair Trade Act, namely paragraph (2) of *R. S.* 56:4–5, as amended by *L.* 1938, *c.* 165, *sec.* 1, *N. J. S. A.* 56:4–5(2)(*a*).

*R. S.* 56:4–5, as amended by *L.* 1938, *c.* 165, *sec.* 1, *N. J. S. A.* 56:4–5, *supra,* reads as follows:

"(1) No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, or the vending equipment from which said commodity is sold to consumers bears, the trade-mark, brand, or the name of the producer or owner of

such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of this State by reason of any of the following provisions which may be contained in such contract:

(a) That the buyer will not resell such commodity except at the price stipulated by the vendor;

(b) That the producer or vendee of a commodity require upon the sale of such commodity to another, that such purchaser agree that he will not, in turn, resell except at the price stipulated by such producer or vendee.

(2) Such provisions in any contract shall be deemed to contain or imply conditions that such commodities may be resold without reference to such agreement in the following cases:

(a) In closing out the owners' stock for the purpose of discontinuing delivering any such commodity;

(b) When the goods are damaged or deteriorated in quality, and notice is given the public thereof;

(c) By any officer acting under orders of any court."

The defendants are not participants in Sunbeam's resale price maintenance agreements, and are proceeded against under the "nonsigner" provision of the New Jersey Fair Trade Act, namely, *R. S.* 56:4–6, as amended by *L.* 1938, *c.* 165, *sec.* 2, *N. J. S. A.* 56:4–6, which reads as follows:

"Willfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section 56:4–5 of this Title, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of the producer or distributor of such commodity or at the suit of any retailer selling such commodity at not less than the price stipulated in any contract entered into pursuant to the provisions of section 56:4–5 of this Title."

█ The plaintiff urges the court to declare that the minimum price established in its "fair trade" agreements should be more rigidly enforced against nonparticipants than upon participants. The statute is in derogation of common-law rights of the defendants, see the *General Electric Company* case, *supra,* and cases therein cited on this principle, and therefore must be strictly construed. *N. J. S. A.* 56:4–6, *supra,* makes no distinction between signer and nonsigner insofar as violation of the "fair trade" contract is concerned, and the language used therein, *viz.,* "at less than the price

stipulated in any contract entered into pursuant to the provisions of" *N. J. S. A.* 56:4–5, *supra,* necessarily imports no intent to distinguish between minimum prices stipulated in the contract. *N. J. S. A.* 56:4–5, *supra,* provides for two scales of minimum prices, namely, (a) the fixed scale, *i. e.,* contract minimum price, for ordinary business and (b) the statutory "scale," *i. e.,* minimum of zero, where conditions exist permitting sales under clause (2) of *N. J. S. A.* 56:4–5, *supra,* one of which conditions is (*subpar. a*) "In closing out the owners' stock for the purpose of discontinuing delivering any such commodity."

The defendants insist that "close-out" sales are excluded from the operation of the statute as to nonsigners. The language of the statute hereinbefore quoted and analyzed permits the interpretation that a nonsigner is entitled to the benefit of a clause of the fair trade contract made mandatory by law. Equitably, assertion of a right under an agreement ordinarily carries with it the correlative responsibility to comply with provisions of the agreement pertinent to the right and, in this case, restrictive thereof.

The contracts in this case contain the following provisions of this nature:

(Retailers' contract):

"2. Retailer further agrees not to sell any of Producer's products at less than such minimum retail price for the purpose of discontinuing dealing in such products unless the Retailer shall first offer its entire stock of Producer's products to Producer at Retailer's original invoice price, at least ten (10) days before such proposed sale. Retailer further agrees not to sell any of Producer's products which are damaged or deteriorated in any way at less than such minimum resale price unless such products are first offered to Producer at Retailer's original invoice price at least ten (10) days before such proposed sale, and in any event, unless specific notice of such damaged or deteriorated condition is given the public."

(Distributors' contract):

"3. Distributor further agrees not to sell any of Producer's products at less than such minimum wholesale price for the purpose of discontinuing dealing in such products unless the Distributor shall

first offer its entire stock of Producer's products to Producer at Distributor's original invoice price, at least ten (10) days before such proposed sale."

*N. J. S. A.* 56:4–5(2)(a), *supra,* however, provides that sales thereunder may be made "without reference to such agreement." The specific language used by the Legislature clearly expresses the legislative intent that no other clause in the contract may be resorted to in order to deprive the statutory clause of its full effect, at least insofar as non-signers are affected thereby. While conceivably contractual limitations on the duration of a "close-out" sale and an agreement to resell to the producer might be supportable against a party who voluntarily assents thereto (which, however, we do not here decide), it seems undeniable that a nonsigner, having given no such voluntary assent, is not precluded by contract, by waiver or by estoppel from asserting the right to hold a "close-out" sale "without reference to such agreement."

We do not on this appeal determine whether a party to a contract containing the terms hereinbefore quoted would be in a position to maintain that he was not bound by those provisions.

This conclusion, however, does not necessarily invalidate the provisions of the order questioned on this appeal. The statute immunizes certain "fair trade" contracts, requires the provision relating to "close out" sales to be incorporated therein, and establishes the existence of substantive rights of action for violation thereof. There is no restriction on the jurisdiction of the courts of this State written into the statute. The injured party is not relegated to a suit at law for damages, nor to any special form of relief, but is permitted to resort to any applicable remedy for the prevention or redress of civil injury. Thus, it has been established that resort may be had under the statute to the jurisdiction of equity for appropriate relief. See, for example, *Schenley Products Co. v. Franklin Stores Co.,* 124 *N. J. Eq.* 100 (*E. & A.* 1938). It necessarily follows that the full jurisdiction of the equity court attaches and the Superior

Court, Chancery Division, has at least the same broad power over injunctive relief in these matters as had the former Court of Chancery.

In the present matter the injunctive order initially restrains the defendants from selling Sunbeam's trademarked products at less than the prices set in the minimum resale price maintenance contracts of Sunbeam effective in New Jersey. It is well settled in this State that it is within the power of the court exercising equity powers, in granting to a suitor an injunction, to impose terms. *E.g., Sternberg v. Wolff*, 56 *N. J. Eq.* 389, 392 (*E. & A.* 1898). In the light of this principle it was well within the jurisdiction of the trial court in this matter to impose the condition that the defendants should be permitted to close out their stock of Sunbeam appliances, *i. e.*, that the equities called for limited application of *N. J. S. A.* 56:4–5(2)(a), *supra*, whether or not the defendants were specifically entitled thereto as a matter of interpretation of legislative intent.

However, the trial court was within its jurisdiction in considering the danger to Sunbeam, and the possibility of evasion of the initial portion of the injunction, in an unlimited permission for the defendants to resort to a close out sale. This the defendants concede in the following language of their brief:

"*   *   * A close-out, under the statute, must be conducted in good faith and the retailer should not be permitted to protract it to the detriment of the manufacturer. To ensure good faith, the court, in the exercise of discretion, may perhaps take reasonable measures to avoid undue extenuation of a close-out.   *   *   *"

The pertinent principle of equity jurisprudence is that the validity of restraints imposed depends on whether they were "no more extensive than was reasonably required to protect the interest of the party in favor of whom it was given, and not so large as to interfere with the interests of the public." *Pen Carbon Manifold Co. v. Tomney*, 90 *N. J. Eq.* 233, 233–234 (*E. & A.* 1919). This principle has been expressed by the United States Supreme Court as follows:

"* * * it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect * * *." *Inland Steel Co. v. United States*, 306 *U. S.* 153, 59 *S. Ct.* 415, 83 *L. Ed.* 557, 560 (1939).

The United States Supreme Court, applying this principle in *Public Service Commission of Missouri v. Brashear Freight Lines*, 312 *U. S.* 621, 61 *S. Ct.* 784, 788, 85 *L. Ed.* 1083, 1088 (1941), further states, "* * * we have no doubt but that the court can mold any decree it renders so as to safeguard the rights of all interested parties." *Cf.* 43 *C. J. S., Injunctions*, § 202, *p.* 929; 28 *Am. Jur., Injunctions*, § 300, *p.* 473. Injunctions cannot be readily standardized, but must be upheld where they go no farther than the issues require.

■ The object of a preliminary injunction is to prevent some threatening, irreparable mischief which should be averted pending a full and deliberate investigation of the case, and acts which destroy a complainant's business, custom and profits are in this category and authorize the issue of a preliminary injunction. *Evening Times Printing & Publishing Co. v. American Newspaper Guild*, 124 *N. J. Eq.* 71, 74 (*E. & A.* 1938). The laws relating to unfair competition are based upon this underlying philosophy, and the New Jersey Fair Trade Act has been enforced on this premise. See *Bristol-Myers Co. v. L. Bamberger & Co.*, 122 *N. J. Eq.* 559, 560, 562 (*Ch.* 1937), affirmed 124 *N. J. Eq.* 235 (*E. & A.* 1938).

■ Application of these principles of equity under the circumstances of this case shows that the 60-day limitation on close-out sales contained in the injunctive order under review is not unreasonable, nor was it more extensive than was reasonably required to protect Sunbeam nor so large as to interfere with the interests of the public. The controversy has not yet reached final hearing. Remand of the record to the Superior Court, Chancery Division, will enable that court to exercise the flexible remedial power of that court, within its inherent general equity jurisdiction, if the

mode of restraint fails or proves too drastic. *Evening Times Printing & Publishing Co. v. American Newspaper Guild, supra* (124 *N. J. Eq.*, at *p.* 78).

The provision of the injunctive order here under review requiring offer of the Sunbeam products to Sunbeam at the original invoice price is comparable to the specific clauses contained in Sunbeam's New Jersey fair trade agreements, quoted *ante*, and also to the specific statutory language adopted in several states. In the early "fair trade" enactment of 29 states the "close out" provision contained such a limitation, but in 14 other states adopting the "close out" provision the limitation concerning resale to the producer or distributor was omitted. See *Weigel, The Fair Trade Acts* (1938), *pp.* 44–60, inclusive. In view of the rule requiring strict construction of the New Jersey Fair Trade Act (hereinbefore adverted to), we have no alternative but to declare that the legislative intent was to permit "close out" sales by "nonsigners" in the ordinary course of business without a preliminary offer to resell to the producer. However, we consider such a condition reasonable where the "nonsigner" seeking to invoke the "close out" clause of the statute does so not in the ordinary course of business but in an effort to continue the practices for which it has been brought into court, pending final hearing thereon. The condition in the present case was deemed reasonable by the trial court in this respect and was supported by affidavits. Under all the circumstances of the case the condition does not appear to be arbitrary, nor so broad as to constitute an abuse of discretion.

The portion of the order granting Sunbeam the right to inspect the premises of the defendants from time to time to determine whether the defendants possess Sunbeam products bearing its trademarks relates to the 60-day "close out" period. It appears reasonably designed to protect the rights of Sunbeam and the order of the court.

For the reasons expressed in this opinion the order of May 8, 1953 of the Superior Court, Chancery Division, is affirmed.

For *affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

For *reversal*—None.