**MANTLE RANCHES, INC., a Colorado corporation, Plaintiff,**

v.

**UNITED STATES PARK SERVICE, an agency of the United States Department of the Interior; Bruce Babbitt, Secretary of the United States Department of the Interior; Roger Kennedy, National Park Service Director; Robert M. Baker, Rocky Mountain Regional Director, National Park Service; Dennis Huffman, Superintendent, Dinosaur National Monument, Defendants.**

**UNITED STATES PARK SERVICE, Bruce Babbitt, Roger Kennedy, Robert M. Baker, Dennis Huffman, Counterclaimants,**

v.

**MANTLE RANCHES, INC., Counter-defendant.**

**Civil Action No. 95–K–531.**

United States District Court, D. Colorado.

Jan. 13, 1997.

Karen Budd–Falen, Franklin J. Falen, Budd–Falen Law Offices, P.C., Cheyenne, WY, Stanley F. Johnson, Boulder, CO, John R. Henderson, Thomas Morris, Vranesh and Raisch, LLC, Boulder, CO, for Plaintiff/Counter–Defendant.

Michael E. Hegarty, Assistant U.S. Attorney, Denver, CO, Thomas R. Graf, Regional

Solicitor's Office, U.S. Department of Interior, Lakewood, CO, for Defendants/Counter–Claimants.

## ORDER ON MOTION TO ALTER OR AMEND

KANE, Senior District Judge.

Mantle Ranches Inc. (Mantle) sues Defendants, including National Park Service ("NPS"), for denial of due process, temporary taking, and violation of the Administrative Procedures Act. Defendants counterclaim against Mantle for damages due to trespass on Dinosaur National Monument ("DNM") land and seek a permanent injunction enjoining Mantle and its agents/representatives from unauthorized entry, use, excavation and/or alteration of DNM lands and resources.

On November 18, 1996, I entered a Memorandum Opinion and Order ("Order") concerning NPS' motion for a preliminary injunction. On November 29, 1996, NPS filed a Motion to Alter or Amend under Federal Rule of Civil Procedure 59(e). Mantle filed a response to the motion and NPS filed a reply.

█ NPS does not address the standard governing its motion, which is, in essence, a motion for reconsideration of the Order.

> A Fed.R.Civ.P. 59(e) motion to alter or amend judgment may properly be cast in the form of a motion to reconsider. *St. Paul Fire & Marine Ins. Co. v. Continental Casualty Co.*, 684 F.2d 691, 693 (10th Cir.1982). There are three major grounds that justify reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D.Colo.1988). Moreover, "a motion for reconsideration is not a license for a losing party's attorney to get a 'second bite at the apple'" and make legal arguments that could have been raised before. *Id.*

*Johnston v. Cigna Corp.*, 789 F.Supp. 1098, 1101 (D.Colo.1992), *aff'd*, 14 F.3d 486 (10th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 720 (1995).

NPS presents no argument that there has been a change in law or that new evidence is available. Accordingly, to obtain the relief it seeks, NPS must show clear error or manifest injustice in the Order. I find, in all but one aspect, it has not done so.

### I.  Issues.

In raising various issues for reconsideration, NPS' motion emphasizes the need to "preserve" DNM in its original pristine state. However, if the intent of Congress is to *restore* DNM and the adjacent properties belonging to Mantle to such state, it must do so by budgeting the necessary funds to condemn such properties, rather than taking the property rights by a process of regulatory whittling. Congress recognized this when it enacted Public Law 86–729 of 1960, revising the boundaries of DNM and providing for the construction and improvement of roads to facilitate access to DNM "subject to valid existing rights." Pub.L. No. 86–729, 857 (1960).

> [G]razing privileges appurtenant to privately owned lands located within Dinosaur National Monument shall not be withdrawn until title to the lands on which such privileges are appurtenant shall have vested in the United States, except for failure to comply with the regulations applicable thereto after reasonable notice of default.

*Id.*, 858. This premise informs the consideration of the issues before me.

### A.  *Illegal Dumping.*

NPS requests reconsideration of the Order insofar as it authorizes the storage of hay on a shelf of land protected by an overhang on the bank of the Yampa River adjacent to the curtilage. I found the presence of snowmobile chassis, parts and other items on the site contrary to its historic use for the storage of hay. I ordered the cessation of such illegal dumping, stating the site could be used only for the storage of hay in accordance with historic practice.

NPS asserts there was no evidence that the Mantle family was using the site before it was declared a national monument and therefore no evidence of an historic vested use.

Tim Mantle, however, testified to this historic use. Additionally, NPS argues, the introduction of hay into DNM has been the source of invasions of noxious weeds and access to the hay storage site would require use of vehicles over the monument, carrying the risk of potential damage. It maintains a weighing of the burdens favors NPS because allowing the storage of hay would not "substantially assist" Mantle as they have another hay storage area nearby. Finally, NPS states, public interest favors clearing the site completely and returning it to as pristine a condition as circumstances allow.

Mantle responds these arguments could have been and, in part, were presented during the hearing. It states NPS' assertions regarding relative usefulness of the site to the ranch operation and potential weed infestation in the area are unsupported by the evidence and NPS has not shown that the Order is manifestly unjust in this regard. I agree and deny this request for reconsideration.

### B. *Illegal Water Development.*

NPS next requests that the Order be amended to reflect that the two springs at issue are on DNM; to require approval by the Superintendent before any new reconstruction is begun on the springs; and to postpone any obligation of NPS to reconstruct the water collection system until discovery and briefing concerning the issue can be accomplished.

The Order noted Mantle had stated there was a question as to whether the spring box which NPS had destroyed was located on DNM and an administrative appeal was pending regarding the results of a 1995 cadastral survey indicating it was on NPS lands.

NPS asserts it was undisputed at the hearing that the spring boxes were on DNM and the order should be amended to reflect that. Mantle denies that the issue was undisputed.

The Order made no finding as to whether the spring boxes were on DNM, but stated:

I find NPS has not shown its likelihood of success on the merits of its counterclaim that Mantle has trespassed on DNM, engaged in illegal water development, and diverted water resources. To the contrary, the evidence and inspection of the area, in particular of the site in the vicinity of the removed spring box, reveals Mantle's historic access to the water sources in controversy. Without such historic right of access, the preservation in the Code of Federal Regulations of grazing privileges predating the establishment of DNM would be meaningless. *See* 13 C.F.R. § 7.63(b).

(Order at 10.)

I ordered NPS to restore the spring box and pipes to their former condition at its own expense. The Order was based on NPS' interference with Mantle's historic adjudicated water rights, rather than the springs' locale. NPS has not shown clear error or manifest injustice in this regard.

The destruction of the springs was put in issue by Plaintiff's Response to Defendants' Motion for Preliminary Injunction which asserted NPS could not take private property in violation of the 5th Amendment of the Constitution and noted NPS had failed to give Mantle notice of its intent to destroy the spring box and failed to follow its own regulation in this regard. (Pl's. Resp. Defs.' Mot. Prelim. Inj. at 8.) The issue was raised again during the hearing and in closing arguments.

I have jurisdiction to issue a mandatory injunction under 28 U.S.C. § 1331. *See Carpet, Linoleum & Resilient Tile Layers v. Brown,* 656 F.2d 564, 567 (10th Cir.1981). Moreover the Administrative Procedure Act, 5 U.S.C. § 702, provides a general waiver of the government's sovereign immunity from injunctive relief. *United States v. Murdock Mach. & Eng'g Co.,* 81 F.3d 922, 929 n. 8 (10th Cir.1996). Finally, inherent in the power of this court sitting in equity lies "the expedient of imposing terms and conditions upon the party at whose instance" equitable relief is sought. *See Inland Steel Co. v. United States,* 306 U.S. 153, 156–57, 59 S.Ct. 415, 417–18, 83 L.Ed. 557 (1939).

For the aforesaid reasons, I deny the United States' requests for the amendment of the

Order concerning the issue of illegal water development.

### C. Illegal Road Development and Off-road Vehicle Use.

 NPS requests me to amend the Order to prohibit use of snowmobiles and ATV's and to require the vehicles to use existing roads and further, to prohibit DNM road improvement absent a permit and/or the required environmental assessments, or until a trial on the merits.

NPS sought to enjoin Mantle from tearing up DNM lands for purposes of constructing or improving roads and to prohibit illegal off-road motorized vehicle use. I found the evidence did not establish there had been violation of the regulations as alleged and therefore that NPS had not shown its likelihood of success with regard to this aspect of its counterclaim.

NPS argues the evidence showed Mantle has used snowmobiles and ATV's on DNM contrary to federal regulations and the 1975 permit. Mantle asserts there was conflicting evidence in this regard and that the regulations allow such use as long as it is on designated routes. *See* 36 C.F.R. § 7.63(c) (1996). NPS replies there are no roads designated for snowmobile use along the Yampa Bench Road and therefore an injunction is necessary. Further, it claims the threat of illegal road development or improvement still remains, also necessitating an injunction.

Upon reconsideration, I find clear error in the Order only insofar as it found the evidence had not established the likelihood of NPS succeeding on its claim that there had been violation of the regulations concerning snowmobile and ATV use. I amend the Order so as to prohibit the use of ATV's and snowmobiles in violation of federal regulations and Condition No. 16 of the 1975 Special Use Permit along the Yampa Bench Road.

### II. Conclusion.

For the aforesaid reasons, I grant the Motion to Alter or Amend the Order so as to prohibit the use of ATV's and snowmobiles in violation of federal regulations and Condition

number 16 of the 1975 Special Use Permit along the Yampa Bench Road. I deny the motion in all other respects. Accordingly,

IT IS ORDERED THAT the Motion to Alter or Amend is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED THAT the Memorandum Opinion and Order entered on November 18, 1996 is amended to reflect that Mantle is enjoined from using ATV's and snowmobiles in violation of federal regulations and Condition No. 16 of the 1975 Special Use Permit along the Yampa Bench Road;

IT IS FURTHER ORDERED THAT Mantle is to file a report within ten days of the date of filing of this order regarding the removal of all debris, snowmobile parts and chassis, tires and other items from the riverbank site;

IT IS FURTHER ORDERED THAT NPS, in accordance with the November 18, 1996 order that it restore to Mantle its historic right of access to "Joe's Grave," remove the sign along the Yampa Bench Road prohibiting such access.