**VIRGINIA PETROLEUM JOBBERS ASSOCIATION, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Blue Ridge Gas Company, Intervenor.**

**No. 15750.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 14, 1960.

Decided June 22, 1961.

---

Mr. Bryce Rea, Jr., Washington, D. C., for petitioner.

Mr. Howard E. Wahrenbrock, Sol., Federal Power Commission, with whom Messrs. John C. Mason, Gen. Counsel, Federal Power Commission, Robert L. Russell, Asst. Gen. Counsel, Federal Power Commission, and Milton J. Grossman, Washington, D. C., Atty., Federal Power Commission, were on the brief, for respondent. Messrs. Willard W. Gatchell, Gen. Counsel, Federal Power Commission, at the time the record was filed, Edwin J. Reis and Peter H. Schiff, Attys., Federal Power Commission, also entered appearances for respondent.

Mr. Donald E. Van Koughnet, Washington, D. C., for intervenor.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

The Blue Ridge Gas Company, intervenor herein, is a distributor of propane air gas in Harrisonburg, Virginia, and environs. It desires to establish natural gas service by constructing facilities to connect with an interstate pipeline, Atlantic Seaboard Corporation, a natural gas company certificated under the Natural Gas Act, 15 U.S.C.A. §§ 717–717w, at a point in Virginia. Having obtained a certificate of convenience and necessity authorizing construction and operation of the project from the State Corporation Commission, Blue Ridge applied to the Federal Power Commission under Section 7(a) of the Natural Gas Act, 15 U.S.C.A. § 717f(a) for an order directing Atlantic to sell an appropriate supply of gas to Blue Ridge and to establish physical connection with its facilities. The Virginia Petroleum Jobbers Association, an organization of wholesale and retail petroleum distributors, sought to intervene in the proceeding. When the Commission refused to allow intervention, we reversed and ordered a new hearing at which Jobbers might participate. Virginia Petroleum Jobbers Ass'n v. FP C, 1959, 105 U.S.App.D.C. 172, 265 F.2d 364. At the conclusion of the second hearing the examiner recommended that the requested order be granted, and the Commission adopted his recommendation. Blue Ridge Gas Co., 23 F.P.C. 245 (1960). The questions presented are:

(1) May the Commission decline to issue a subpoena for expert testimony and for production of reports prepared by an expert witness for private clients?

(2) Is the finding that the grant of the order was in the public interest supported by substantial evidence?

(3) Should the Commission have ordered that the record be reopened to hear evidence of changes in Atlantic's rates?

■ Although the Commission lacks regulatory jurisdiction over the purely intrastate operation proposed by Blue Ridge, 15 U.S.C.A. § 717(c), the application by Blue Ridge for an extension of service from Atlantic placed the feasibility of the project in issue. The Commission was bound to protect present and potential users of Atlantic's gas supply from the diversion of gas to a project which is not financially feasible, as well as to consider the effect on Atlantic's other rates of the extension of service. See Minneapolis Gas Co. v. FPC, 108 U.S.App.D.C. 36, 278 F.2d 870, certiorari denied 1960, 364 U.S. 891, 81 S.Ct. 220, 5 L.Ed.2d 186; Panhandle Eastern Pipe Line Co. v. FPC, 3 Cir., 232 F.2d 467 certiorari denied, 1956, 352 U.S. 891, 77 S.Ct. 129, 1 L.Ed.2d 86.

■ The primary evidence offered by Blue Ridge at the hearing was a study by a professional engineering firm. Petitioner requested that a subpoena *duces tecum* issue to a private engineer for the production of a report on the feasibility of an earlier but similar project which the engineer had made at the behest of the predecessor of Blue Ridge. The examiner held, and the Commission agreed, that the subpoena should not be granted for expert testimony of this nature, in the absence of an agreement by petitioner for appropriate compensation.

Jobbers contends that the Commission should not have considered this factor, because the matter sought was relevant and material and Section 6(c) of the Administrative Procedure Act, 5 U.S.C.A. § 1005(c), provides that "agency subpenas * * * shall be issued to any party upon request and * * * upon a statement or showing of general relevance and reasonable scope of the evidence sought."

Whether a subpoena calling for testimony of this nature was of "reasonable scope" is primarily a problem for the Commission. While we have held in a civil case that expert testimony could in some circumstances be compelled by subpoena, Bradley v. Davidson, 1918, 47 App.D.C. 266, we note that many other courts have taken the contrary view. E. g., L'Etoile v. Director of Pub. Works, R.I.1959, 153 A.2d 173; Pennsylvania Co. for Insurances on Lives & Granting Annuities v. City of Philadelphia, 1918, 262 Pa. 439, 105 A. 630, 2 A.L.R. 1573. We cannot deny the Commission its choice between these views on what is essentially a procedural matter, particularly since it is in a better position than the courts to judge the proper method of compensation for the expert testimony which necessarily comprises a substantial portion of the evidence before it. To extend the reach of the Bradley case to the administrative process would unduly encroach on matters more appropriately left to the experienced discretion of the agency.

■ Petitioner also urges that the record does not support the findings that the grant of the application is in the public interest. We find it unnecessary to discuss particular items of evidence whose weight is contested, since we are satisfied that the availability of a sufficient gas supply, the financial feasibility of the project and the need for the service are amply shown in the record.

■ Finally, petitioner urges that the Commission should have granted its request to reopen the record to show changes in the rate schedules of Atlantic which might affect the feasibility of the project. The situation presented is the classic administrative law problem of the staleness of the record, in this context, because of recurrent rate changes. As the Supreme Court has stated, if the litigants "might demand rehearings as a matter of law because some new circumstance has arisen, some new trend has been observed, or some new fact discovered, there would be little hope that the ad-

ministrative process could ever be consummated * * *." ICC v. Jersey City, 1944, 322 U.S. 503, 514, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420. This is not a case in which evidence was rejected because of an erroneously narrow view of the scope of inquiry at the hearing. Cf. Michigan Consol. Gas Co. v. FPC, 108 U.S.App.D.C. 409, 283 F.2d 204, certiorari denied, 1960, 364 U.S. 913, 81 S.Ct. 276, 5 L.Ed.2d 227; City of Pittsburgh v. FPC, 1956, 99 U.S.App.D.C. 113, 237 F.2d 741.

Affirmed.

WILBUR K. MILLER, Chief Judge (concurring in the result).

I agree that the Federal Power Commission properly refused to issue a subpoena duces tecum for an engineering report as to the feasibility of an earlier project similar to that of Blue Ridge. But I think the refusal to issue the subpoena should be sustained, not for the reason given by the Commission and the court, but because the Commission had no jurisdiction to pass on the feasibility of the Blue Ridge project.

The majority's concession that "the Commission lacks regulatory jurisdiction over the purely intrastate operation proposed by Blue Ridge" does not go far enough; for the Commission also lacks jurisdiction over the facilities to be used in the operation.[1] It follows, I think, that the economic feasibility of the proposed construction and operation of facilities for the local distribution of gas is a matter to be passed on by the appropriate state agency. It seems to me, therefore, that Section 1(b) of the Natural Gas Act excludes the feasibility of proposed local distribution facilities from the jurisdiction of the Power Commission, and that the subpoena should have been refused on the ground that the engineering report called for by it related to an issue concerning which the Power Commission had no authority.

The majority hold, however, that when Blue Ridge asked the Power Commission to exercise its authority under Section 7(a) of the Natural Gas Act to direct Atlantic to furnish it with gas, it thereby subjected the feasibility of its project to the scrutiny and determination of the Power Commission. In this connection the majority say:

"Although the Commission lacks regulatory jurisdiction over the purely intrastate operation proposed by Blue Ridge, 15 U.S.C.A. § 717(c), the application by Blue Ridge for an extension of service from Atlantic placed the feasibility of the project in issue. [1] The Commission was bound to protect present and potential users of Atlantic's gas supply from the diversion of gas to a project which is not financially feasible, [2] as well as to consider the effect on Atlantic's other rates of the extension of service. * * *"

For convenient reference, I have numbered the two statements of principle in the last of the quoted sentences. Neither of them supports the proposition set forth in the preceding sentence: "the application by Blue Ridge placed the feasibility of the project in issue." This is demonstrable, I think.

Statement No. 1 in the quoted excerpt from the majority opinion is, of course, true, but it has no application to the present situation. For the Blue Ridge project is not one "which is not financially feasible." The Virginia Commission's certificates of convenience and necessity, to which I shall make further reference, constitute or reflect a finding by that agency, which had undoubted jurisdiction, that the Blue Ridge project is financially feasible.

The question here is not whether the Power Commission "was bound to protect present and potential users of Atlantic's gas supply from the diversion of

---

1. Section 1(b) of the Natural Gas Act, 52 Stat. 821 (1938), 15 U.S.C.A. § 717 (b), provides that "The provisions of this Act * * * shall not apply * * * to the local distribution of natural gas or to the facilities used for such distribution * * *."

gas to a project which is not financially feasible." That may be admitted, as I have said. The question is whether Blue Ridge's application for service gave to the Power Commission jurisdiction to pass on the feasibility of its proposed intrastate project, which had already been approved by the state commission having regulatory jurisdiction. If the Power Commission thereby acquired such jurisdiction, it could only be under Section 7(a) of the Natural Gas Act, which is reproduced in the margin.[2]

It will be noted that, under Section 7(a), before the Power Commission may direct a natural gas company to "sell natural gas to, any person * * * legally authorized to engage in * * * local distribution * * *," it must find such action necessary or desirable in the public interest; and must further find that it would not impair the wholesaler's ability to render adequate service to its customers, and would not place an undue burden upon it. Obviously it is in the public interest that gas be furnished to a legally authorized local distributor if it can be done without prejudice to the wholesaler or to customers already attached; so the inquiry is really narrowed to the question whether such prejudice would result.

I suggest that, in addition to making the findings which are statutory prerequisites, the Power Commission must be satisfied, before ordering service, that the applicant is a "person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public". When

it is so satisfied, and when it has made the statutory findings, the Power Commission may order the connection. Significantly, the statute does not direct that it must find the local project feasible; such provision was purposely omitted from Section 7(a), I think, for the reason that a legally authorized project is one which has been found feasible. It is therefore my view that, having found the applicant legally authorized by state authority, the Power Commission need not make, and indeed is not authorized or required to make, an independent investigation concerning the economic feasibility of the applicant's local project.

In this case the Power Commission knew its applicant was legally authorized to engage in local distribution. There was before it a certified copy of the order of the State Corporation Commission of Virginia, dated May 22, 1958, granting to Blue Ridge Gas Company certificates of public convenience and necessity to construct and operate the gas transmission lines and other facilities proposed by it. The Virginia authorization was admitted in evidence by the Examiner of the Federal Power Commission May 11, 1959, and was filed with his certification October 20, 1959. The issuance of those certificates caused Blue Ridge to be a "person * * * legally authorized to engage in the local distribution of natural or artificial gas to the public" within the meaning of Section 7(a). I think, as I have indicated, the state certificates connoted an affirmative finding that the Blue Ridge project was economically feasible, for I am sure

2. Section 7(a), 52 Stat. 824 (1938), 15 U.S.C.A. § 717f(a), is as follows:

"Sec. 7. (a) Whenever the Commission, after notice and opportunity for hearing, finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public, and for such purpose to extend

its transportation facilities to communities immediately adjacent to such facilities or to territory served by such natural-gas company, if the Commission finds that no undue burden will be placed upon such natural-gas company thereby: *Provided,* That the Commission shall have no authority to compel the enlargement of transportation facilities for such purposes, or to compel such natural-gas company to establish physical connection or sell natural gas when to do so would impair its ability to render adequate service to its customers."

that otherwise the certificates would not have been issued.

I turn to consider statement of principle No. 2, in the excerpt from the majority opinion quoted above: "The Commission was bound * * * to consider the effect on Atlantic's other rates of the extension of service." While this is true as a general proposition, it has nothing to do with the financial feasibility of the applicant's local project; instead, it goes to the question whether on the whole the connection would be in the public interest.

Even if an adverse effect on Atlantic's other rates were germane to the question whether the Power Commission has jurisdiction to determine the feasibility of the local project, it would have no bearing here because the proposed connection could have no such effect. The Blue Ridge proposal did not make necessary an "extension of service" by Atlantic, if that term is used to mean an extension of facilities, for Blue Ridge is to build a line to connect its system with Atlantic's pipeline. The only investment required of Atlantic is the trifling cost of a physical connection with its line, which will have no impact whatever on Atlantic's rates.

I consider it immaterial that the Power Commission did not rely on lack of jurisdiction of the feasibility question as a reason for refusing to issue a subpoena duces tecum, for it seems to me that the Chenery rule [3] does not apply when a jurisdictional question is presented. The mere fact that the Commission exercised jurisdiction does not preclude us from considering the question whether such jurisdiction existed. The question of jurisdiction lies at the threshold of every inquiry by a court or a commission. Without it, no valid action can be taken.

The majority's disposition of the subpoena question is a holding that the Power Commission had jurisdiction, in the circumstances here, to make its own de-

termination of the feasibility of the Blue Ridge project. This is an erroneous holding, with which I am unwilling to agree. Otherwise, I concur in the reasoning of the majority opinion, and I join in the affirmance of the Power Commission's order.

---

3. S. E. C. v. Chenery Corp., 1943, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626; S. E. C. v. Chenery Corp., 1947, 332 U.S. 194, 67 S.Ct. 1575, 1760, 91 L.Ed. 1995.