302 F.2d 887
 FLOTA MERCANTE GRANCOLOMBIANA, S.A., Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America, Respondents,
Philip R. Consolo, Banana Distributors, Inc., Intervenors.
Philip R. CONSOLO, Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America, Respondents,
Flota Mercante Grancolombiana, S.A., Intervenor.
FLOTA MERCANTE GRANCOLOMBIANA, S.A., Petitioner,
v.
FEDERAL MARITIME COMMISSION and United States of America, Respondents,
Philip R. Consolo, Intervenor.
 No. 15330.
 No. 16366.
 No. 16369.
 United States Court of Appeals District of Columbia Circuit.
 Argued December 11, 1961.
 Decided April 26, 1962.
 
 Mr. J. Alton Boyer, Washington, D. C., with whom Mr. Odell Kominers, Washington, D. C., was on the brief, for petitioners in No. 15,330 and No. 16,369 and for intervenor in No. 16,366. Mr. T. S. L. Perlman, Washington, D. C., also entered an appearance for petitioner in No. 15,330.
 Mr. Robert N. Kharasch, Washington, D. C., with whom Mr. William J. Lippman and Mrs. Amy Scupi, Washington, D. C., were on the brief, for petitioner in No. 16,366.
 Mr. Thomas D. Wilcox, Attorney, Federal Maritime Commission, with whom Messrs. James L. Pimper, General Counsel, Federal Maritime Commission, and Robert E. Mitchell, Deputy General Counsel, Federal Maritime Commission, were on the brief, for respondents. Mr. Edward Aptaker, Assistant General Counsel, Division of Regulations, Federal Maritime Commission, at the time the brief was filed, was on the brief for respondents in No. 15,330. Mr. Irwin A. Seibel, Attorney, Department of Justice, was on the brief for respondents in No. 15,330, and also entered an appearance for respondent United States of America in No. 16,366 and No. 16,369. Mr. Richard A. Solomon, Attorney, Department of Justice, was on the brief for respondents in No. 16,366 and No. 16,369 and also entered an appearance for respondent United States of America in No. 15,330.
 Mr. Robert N. Kharasch, Washington, D. C., with whom Mr. William J. Lippman, Washington, D. C., was on the brief, for intervenor Philip R. Consolo in No. 15,330 and No. 16,369. Mr. George F. Galland, Washington, D. C., also entered an appearance for intervenor Philip R. Consolo in No. 15,330 and No. 16,369.
 Messrs. Richard W. Kurrus, and James N. Jacobi, Washington, D. C., were on the brief for intervenor Banana Distributors, Inc., in No. 15,330.
 Before WILBUR K. MILLER, Chief Judge, and BAZELON and WASHINGTON, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 These cases raise issues concerning the grant of reparations by the Federal Maritime Board[1] to Philip R. Consolo, a banana shipper, against Flota Mercante Grancolombiana, S.A. ("Flota"), a steamship company, for Flota's allegedly discriminatory treatment of Consolo, who sought space on Flota's vessels for the shipment of bananas from Ecuador to the United States.
 
 
 2
 In our case No. 15,330, Flota challenges an order of the Board, dated June 22, 1959, in which the Board found Flota to be a common carrier of bananas between the United States and Ecuador, and to have discriminated against Consolo in the allocation of space, in violation of Sections 14 and 16 of the Shipping Act of 1916, as amended, 46 U.S.C.A. §§ 812, 815.[2] In No. 16,369, Flota challenges a later order of the Board, issued March 30, 1961, directing Flota to pay Consolo some $143,370.98 as reparations for the conduct condemned in the order of June 22, 1959. In No. 16,366, Consolo challenges the award of March 30, 1961, as inadequate.[3]
 
 I.
 
 3
 We will take up first the issues presented in No. 15,330. The background of the controversy may be briefly stated. The Grace Line, another steamship company, offered a year-round regularly-scheduled weekly service to North Atlantic ports with vessels containing refrigerated ("reefer") cargo space suitable for carrying bananas. Flota offered a generally similar service. In a proceeding against the Grace Line, the Maritime Board ruled that under the Shipping Act that line was a common carrier, and must offer refrigerated space to all qualified banana shippers. Banana Distributors, Inc. v. Grace Line, Inc., 5 F.M.B. 615 (1959), aff'd sub nom. Grace Line, Inc. v. Federal Maritime Board, 280 F.2d 790 (2d Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961); see also Consolo v. Grace Line, Inc., 4 F.M.B. 293 (1953). Since that ruling, Grace has carried bananas for a number of shippers. Flota, however, has carried bananas since 1950 under special contracts giving the contracting shippers the exclusive use of Flota's refrigerated facilities. In August 1957, following the Board's first decision in the Grace cases, Consolo made a written demand on Flota for a fair share of Flota's refrigerated space. This was refused. On October 30, 1957, Flota filed a petition with the Board for a declaratory order determining whether or not Flota was required to cancel its existing contracts for banana shipment. On November 15, 1957, Consolo filed his complaint. Banana Distributors, a banana shipper similarly situated, filed its complaint thereafter. The three proceedings — the petition for a declaratory order and the two complaints — were consolidated for hearing.
 
 
 4
 At an early stage, the Examiner ruled that he would defer the taking of evidence on the measure of reparation due the complainants until after the merits of the complaints were decided. The merits were determined in Consolo's favor by order of the Board dated June 22, 1959, and it is this order which Flota seeks to have reviewed in No. 15,330. At a proceeding commenced after the decision on the merits, evidence of damages was taken, and the Board entered a Report and Order on March 28, 1961, directing Flota to pay Consolo $143,370.98 in reparations.
 
 
 5
 The threshold question in No. 15,330 is whether the Board could properly find, as it did, that Flota violated Section 14 Fourth and Section 16 First of the Shipping Act of 1916.[4] Flota argues that the issue whether it had violated these sections of the Act was not properly before the Board when the latter rendered its Report and Order of June 1959. The Board's Examiner had ruled, as we have seen, that the proceeding would be heard in two phases. In essence, Flota contends that the first phase was concerned only with the question whether or not Flota was a common carrier of bananas, and that all remaining issues, including the crucial question whether Flota was in violation of the Shipping Act, were reserved for the subsequent proceeding.[5] As a corollary, Flota claims that in the first proceeding it was deprived of a proper hearing on the question of violation of the Act because it put on complete testimony only with respect to the common carrier issue.
 
 
 6
 The literal language used in making, and granting, the motion for a severance of the hearing can probably be read in such a way as to lend some support to Flota's contention. Thus, counsel for Banana Distributors, in moving to sever, said "we would like an immediate decision * * * on the question of whether or not the Grancolombiana Line is a common carrier" and "if the Grancolombiana Line is found not to be a common carrier, that would end the case." The Board explains this language by saying that the term "common carrier issue" was a kind of oral shorthand for the concept of violation of Flota's duties as a common carrier under the Shipping Act.
 
 
 7
 Be that as it may, a careful reading of the record leads us to the conclusion that the only matter removed from the first proceeding was the question of the quantum of damages, not the issue of violation of the Shipping Act. Such in our view must or should have been the understanding of all parties, including Flota. In granting the motion to sever, the Examiner stated: "We ought to proceed with the merits." It is difficult to imagine the "merits" as excluding the issue of whether Flota had violated the Act. And in requesting separation, counsel for Banana Distributors spoke only of "our damage case" and "the damage part of this proceeding" as belonging in the second stage of the hearings. Moreover, counsel described the motion to sever as "a severance of the proceeding just like was done in the Grace Line case." It seems to us that the parties must have understood this as a reference to the closely similar and very recent Grace case, in which the common carrier and violation issues were treated together.[6] Similarly, in two earlier Board cases which involved separated proceedings, only the question of the extent of the damages was left to the second hearings. See Roberto Hernandez, Inc. v. Arnold Bernstein Schiffartsgesellschaft, 1 U.S.M.C. 686 (1937), 2 U.S. M.C. 62 (1939), aff'd, 116 F.2d 849 (2d Cir. 1941); Waterman v. Stockholms Rederiaktiebolag Svea, 3 U.S.M.C. 131 (1949).[7]
 
 
 8
 In moving for a severance, counsel for Banana Distributors clearly informed the Examiner and other counsel that his purpose was to "get on the Grancolombiana Line ships as promptly as possible." Given that purpose, it would have been pointless to restrict the case to the sole inquiry whether petitioner was a common carrier. For even if Flota were found to be a common carrier, this in itself would not get Consolo on Flota's boats if Flota's denial of space to Consolo was not an "unjust" or "unreasonable" discrimination.
 
 
 9
 Our conclusion that Flota should have known that the question of its violation of the Act was in issue is borne out by indications that Flota did in fact know this. In its own brief to the Examiner Flota recognized that the legality of its conduct was in question. It argued that "denial of space violates the Shipping Act only if it constitutes an unjust discrimination between competitors." It concluded its brief by arguing that its contracts "do not violate Section 16, First or Section 14, Fourth of the Shipping Act, 1916."
 
 
 10
 Finally, in its presentation of evidence and argument below, Flota went far beyond the "common carrier" question. It contended before the Examiner that even if it was a common carrier, it could not as a practical matter offer its refrigerated space on a non-discriminatory basis. It also argued that complainants had not shown that they were prejudiced or unjustly discriminated against because, according to petitioner, they had failed to show that they were competitors of Panama Ecuador, the favored shipper. Flota's presentation of its case in the first phase of the hearing is inconsistent with the position it now advances.[8] We conclude that the Board properly had before it the issue whether Flota had violated the Shipping Act.
 
 
 11
 We turn to the Board's findings that Flota was a common carrier, and that it had violated Section 14 Fourth and Section 16 First of the Shipping Act. Flota argues that it was not a common carrier of bananas. But Flota as to most commodities is admittedly a common carrier by water, and maintains a regularly scheduled and advertised cargo service between the west coast of South America and various ports in the United States. With the sole exception of bananas, which Flota regularly carries on the same vessels as other goods, Flota has carried cargo without discrimination, and without asserting a right to pick and choose among qualified shippers. But Flota charges the Board with error because the Board should have made "a finding as to petitioner's status in the carriage of bananas, without regard to its status in the carriage of other commodities not employing its reefer facilities." However, this precise argument was rejected in Grace Line, Inc. v. Federal Maritime Board, 280 F.2d 790 (2d Cir. 1960) — a decision with which we agree.[9] Flota began its defense before the Board by "assuming that the Grace Line decision [of the Board] is good, valid law, and we are not attacking that in any manner, shape or form." Flota sought to avoid the effect of the Grace Line cases by showing that Flota's operations and vessels were substantially different from those of the Grace Line. The Examiner and the Board took extensive evidence and considered this question at great length. The Board concluded: "The arguments relating to the differences between Flota's vessels and Grace's vessels are not impressive. * * Operational difficulties and vessel limitations do not justify prejudice and discrimination otherwise undue and unreasonable." 5 F.M.B. at 639. We believe this finding by the Board to be adequately supported by the record.
 
 
 12
 Finally, Flota contends that the Board did not consider the reasonableness of Flota's actions, did not make a finding with respect thereto, and could not on the record have found that Flota acted "unjustly" or "unreasonably." But the Board's report said in explicit terms "We find no justification for this conduct on the part of Flota * * *." As we have pointed out, the Board rejected Flota's argument that structural differences between Flota's ships and Grace's justified Flota's discrimination. It also rejected Flota's attempted justification based on vessel scheduling and shipper convenience. It ordered that space be made available to shippers on a "fair and reasonable basis." It noted that an appropriate forward-booking system would be just and reasonable, "as opposed to `unjust' and `unreasonable' which aptly describes the present system." Under the circumstances, we think it beyond question that the Board considered and made sufficient findings as to the reasonableness of Flota's conduct.
 
 
 13
 The Board's findings are supported by the record. Flota argues that it acted reasonably in refusing space to Consolo because Flota already had an exclusive contract with another shipper, Panama Ecuador, and because it sought to ascertain the legality of its conduct by petitioning the Board for a declaratory order. But the making and performance of the exclusive contract comprised the very conduct which constituted violation of the Act. Flota discriminated by favoring Panama Ecuador over Consolo — just as in the Grace Line case the carrier had made special contracts with favored shippers and had declined to serve others. Nor does Flota's action in petitioning for a declaratory order automatically excuse what would otherwise be a violation of the Act. Allowing the Board that measure of discretion due to it because of its expertise and status as an administrative agency, we think it was entitled to conclude that neither the exclusive contract nor the request for a declaratory order rendered Flota's discriminatory refusal of space reasonable or just.
 
 
 14
 The Board's order of June 22, 1959, challenged in No. 15,330, will accordingly be affirmed.
 
 II.
 
 15
 We turn now to the petitions in No. 16,366 and No. 16,369, dealing with the question of reparations.
 
 
 16
 Jurisdiction. Consolo has moved to dismiss Flota's petition in No. 16,369 for lack of jurisdiction, urging that this court cannot review orders awarding reparations, on petition of the party charged. Flota and the Board resist the motion, alleging that this court possesses jurisdiction to entertain the petition under the Administrative Orders Review Act of 1950 (the Hobbs Act), 5 U.S.C.A. § 1031 et seq. The Hobbs Act gives the courts of appeals exclusive jurisdiction "to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" such final orders of the Federal Maritime Board as "are now subject to judicial review" pursuant to Section 31 of the Shipping Act, 46 U.S.C.A. § 830. Section 31 in turn provides that the venue and procedure in suits to enforce, suspend, or set aside any order of the Federal Maritime Board shall, "except as otherwise provided," be the same as in similar suits in regard to orders of the Interstate Commerce Commission. The relevant statutory provisions regarding I.C.C. orders are contained in 28 U. S.C. §§ 1336, 2321-2325. Section 1336 states:
 
 
 17
 "Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."
 
 
 18
 Since Section 1336 gives the District Courts broad jurisdiction to "set aside" I.C.C. orders, and the procedure for Federal Maritime Board cases is similar by virtue of Section 31, the jurisdiction to set aside final orders of the Federal Maritime Board formerly possessed by the District Court under Section 31 of the Shipping Act appears to have been transferred to this court by the Hobbs Act.[10]
 
 
 19
 Our jurisdiction to review No. 16,366, in which Consolo attacks the reparations granted as inadequate, was not challenged. We agree that the case is properly here. Cf. D. L. Piazza Co. v. West Coast Line, 210 F.2d 947 (2d Cir.), cert. denied, 348 U.S. 839, 75 S.Ct. 42, 99 L.Ed. 661 (1954). If we are obliged to review the order at the complainant's instance, it would be anomalous if we could not review it at the instance of the party it holds liable. Once here, the order should be reviewable in its entirety, and the rights of all parties considered. Cf. Inland Steel Co. v. United States, 306 U.S. 153, 157, 59 S.Ct. 415, 83 L.Ed. 557 (1939).
 
 
 20
 We are well aware, however, that the jurisdictional problems in these cases are not free from doubt and difficulty. The Hobbs Act and Section 31 of the Shipping Act do not in terms purport to give us authority to render a money judgment based on a Board order awarding reparations, or to enforce any order of the Board. If a carrier chooses not to obey an order of the Board for payment of reparations, even after affirmance by this court, it may be that to obtain enforcement the complainant would be forced to go into the District Court in a suit under Section 30 of the Shipping Act, 46 U.S. C.A. § 829. The defendant in such a Section 30 suit would be free to demand a jury trial and to introduce evidence not previously before the Board. In the trial the order and findings of the Board would, by the terms of the statute, be given only prima facie effect. The ultimate result reached in the District Court might vary considerably from the Board's order.[11] Conceivably, a jury might find the carrier to be free of any liability whatever. And any final judgment rendered could be appealed to the appropriate court of appeals, which might not be the same one which had reviewed the order in the first instance. A strong argument can be made that only one review should be permitted, and that we should not undertake to review the Board's reparations order at the present stage, in any respect. We have considered these difficulties in reaching our conclusion. But we think it clear that Congress intended, in the Hobbs Act, to clarify and simplify the review situation as much as possible, rather than to perpetuate distinctions between awards, denial of awards, and other Federal Maritime Board actions, unless such distinctions are inevitable. See H.R.Rep.No. 2122, 81st Cong., 2d Sess. 3 (1950); cf. Pennsylvania R. Co. v. United States, 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960); D. L. Piazza Co. v. West Coast Line, Inc., supra. We think that Congress intended us to review reparations orders, at least to the extent necessary "to determine the validity" of such orders on appropriate petition, and that it is our duty to do so.
 
 
 21
 The scope of our review in Nos. 16,369 and 16,366 also presents difficulties. Questions of law, such as matters of jurisdiction and fair administrative procedure, are obviously for our determination. Cf. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308 (1912). But in reviewing the evidence, we are confined to a much more restricted standard, as the Administrative Procedure Act, § 1 et seq., 5 U.S.C.A. § 1001 et seq., and a long line of Supreme Court decisions, clearly indicate. See, e. g., Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 489, 62 S.Ct. 722, 86 L.Ed. 971 (1942). We have examined the appeals from the reparations award with these considerations in mind.
 
 
 22
 The Merits. In No. 16,366, Consolo seeks additional reparations. He questions the Board's denial of pre-judgment interest. But the cases cited by Consolo, such as Louisville & N. R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242 (1925), only demonstrate that recovery of interest is not barred, not that the granting of interest is mandatory. We find that the Board did not abuse its discretion in denying interest. Cf. Dorsett v. Shore, 254 F.2d 373, 377 (4th Cir. 1957); Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265 (1924); Board of County Com'rs of the County of Jackson v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939).[12] Consolo also claims reparations from the time he first demanded space. The Board calculated the reparations from the time Consolo first demanded an allotment of space. Prior to that time, he was unsuccessfully bidding for an exclusive patronage contract for Flota's entire reefer space. This is exactly the kind of exclusive contract which Consolo now claims was illegal and damaging to him. Under these circumstances, we think the Board was reasonable in declining to begin the reparations period at an earlier date than the time Consolo first attempted to secure a fair and equitable portion of space. Finally, Consolo, like Flota, is dissatisfied with the 18.46% of the total computed net profit awarded to Consolo. Flota says Consolo should only have received 15.58% since this is the only amount of space it says it would have given him. Consolo wants 33 1/3%, arguing that there were only three qualified shippers during the reparation period, and hence he should have been allocated one-third of Flota's banana space. Yet it hardly seems reasonable to say that all qualified shippers must be given equal space, regardless of the applicant's size, facilities, financial position, and ability to arrange for the loading and discharging of the cargo. The Board's selection of 18.46% was based on an allotment to and use by Consolo of that percentage of the cubic capacity of Flota's ships on the United States Atlantic run in actual practice over a period of time. Perhaps the Board might have chosen a better yardstick. Perhaps not. We are surely unable, however, to say that the Board's choice was arbitrary or unreasonable. We therefore find no merit in Consolo's petition in No. 16,366.
 
 
 23
 In No. 16,369, Flota seeks to avoid the payment of reparations primarily by arguing that it did not violate the Shipping Act. To the extent that a number of its contentions in this regard have already been dealt with in our consideration of No. 15,330, we will not repeat them here.
 
 
 24
 Flota makes a number of additional arguments.[13] It first claims that there was no proof or finding of actual competition between Consolo and Panama Ecuador. But though the express words "we find competition existed" are not employed, the entire decision of the Board is implicit with the finding of such competition. For example, the Board repeatedly refers to the fact that "Panama Ecuador, in receiving and using that space [of Flota], was favored and advantaged." 5 F.M.B. 638-39. And the Board explicitly speaks of Flota denying space "to a qualified competitor." 5 F.M.B. 639. In context, the word "competitor" clearly refers to Consolo, in relation to Panama Ecuador.[14] Moreover, granting to the Board the right to draw reasonable inferences, we believe that there is sufficient evidence in the record to support a finding of competition, especially since Consolo and Panama Ecuador were both dealing in exactly the same commodity at the same time, were both "independents," and both shipped extensively to many of the same seaports.
 
 
 25
 One of Flota's principal arguments, however, was and is that the Board erred in failing to hold that it would be inequitable to award reparations to Consolo. Flota marshaled substantial evidence in support of its contention. It pointed to the unsettled nature of the law in the field, as illustrated by the fact that the Second Circuit in the first Grace Line case reversed the Board's order and remanded it, concluding that the legal theory adopted by the Board was erroneous. 263 F.2d 709 at 711. In the second case (which was not decided until July 1960), the majority agreed with the Board's new approach to the case, but Judge Moore filed a strong dissent, 2 Cir., 280 F.2d 790. At the hearing in this case, Flota advanced evidence of factual differences between its situation and that of the Grace Line. While this would not necessarily justify Flota's conduct, it might well lead to the conclusion that Flota in good faith believed that the Grace Line case was distinguishable. Flota also complained, with some justification, of the two-year delay of the Board in rendering a declaratory order.[15] Moreover, Flota already had signed an exclusive contract with Panama Ecuador covering what may well have seemed to be, in the light of the Board's decision in the Banana Distributors cases, 5 F.M.B. 278 (1957), and 5 F.M.B. 615 (1959), a reasonable period of time. By granting space to Consolo and other shippers when first requested, Flota might have opened itself to possible liability for breach of the contract with Panama Ecuador, at least in the absence of a declaratory order from the Board. Finally, Flota pointed out the difficulties and delays in loading which would result if more than one shipper were to use Flota's refrigerated space, and Consolo's apparent failure to utilize all of the space available to him on Grace Line vessels. The Board took up most of these points individually and disposed of them briefly.[16] But the essence of Flota's argument was that the cumulative weight of all the circumstances, and not any one circumstance, rendered it inequitable to require reparations. We are not prepared, on appeal, to go this far; but we do consider, in light of the Board's decision and the damages it imposed, that the Board failed to give adequate consideration to this issue. The Board may have erroneously believed (1) that it was required to grant reparations once it found a violation of the Act,[17] or (2) that all of the issues as to the reasonableness or equity of Flota's conduct were determined in the first phase of the proceeding.[18] In any case, we shall remand to the agency to consider whether, under all the circumstances, it is inequitable to force Flota to pay reparations, or at least inequitable to force it to pay those reparations calculated under the relatively harsh measure of damages utilized by the Board.[19]
 
 
 26
 The Board's order of June 22, 1959, challenged in No. 15,330, is affirmed; the order of March 30, 1961, challenged in Nos. 16,366 and 16,369, is set aside, and the matter remanded to the agency for further proceedings not inconsistent with this opinion.
 
 
 27
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 The Federal Maritime Board has recently been succeeded by the Federal Maritime Commission. See Reorganization Plan No. 7 of 1961, 26 Fed.Reg. 7315. Most of the references in this opinion will be to the Board, but this should be considered as including the Commission, where appropriate
 
 
 [2]
 No. 15,330 was originally held in abeyance pending the outcome of Grace Line, Inc. v. Federal Maritime Board, 280 F. 2d 790 (2d Cir. 1960), cert. denied, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961), a similar case
 
 
 [3]
 Flota is petitioner in No. 16,369, as well as in No. 15,330, and intervenor in No. 16,366. Consolo is petitioner in No. 16,366, and intervenor in No. 15,330. Banana Distributors, an independent importer of bananas which is in substantially the same position as Consolo, is also an intervenor in No. 15,330
 
 
 [4]
 Section 14 of the Shipping Act of 1916, 46 U.S.C.A. § 812, provides in part as follows:
 "No common carrier by water shall, directly or indirectly, in respect to the transportation by water of passengers or property between a port of a State, Territory, District, or possession of the United States and any other such port or a port of a foreign country —
 * * * * *
 "Fourth. Make any unfair or unjustly discriminatory contract with any shipper based on the volume of freight offered, or unfairly treat or unjustly discriminate against any shipper in the matter of (a) cargo space accommodations or other facilities, due regard being had for the proper loading of the vessel and the available tonnage * * *."
 Section 16 of the Act, 46 U.S.C.A. § 815, provides in part:
 "It shall be unlawful for any common carrier by water, or other person subject to this chapter, either alone or in conjunction with any other person, directly or indirectly —
 "First. To make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or to subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."
 
 
 [5]
 Consolo argues that Flota is making this argument for the first time before this court. But in its Request for Oral Argument and Exceptions to the Examiner's recommendation, Flota said: "5 — Flota excepts to the finding that it violated Sections 14 Fourth and 16 First of the Act on the further ground that such a finding was without the scope of the proceedings."
 
 
 [6]
 Numerous statements by counsel for Flota throughout the proceedings unmistakably indicate that Flota understood "the Grace Line case" to be the 1959-60 litigation. Questions of statutory violation were treated in the first half of the Grace proceeding, and were reviewed — and the Board ultimately affirmed — by the Court of Appeals for the Second Circuit in Grace Line, Inc. v. Federal Maritime Board, 280 F.2d 790 (1960), while the issue of the quantum of reparation had been deferred for further Board proceedings
 
 
 [7]
 It may be noted that the Shipping Act itself, at Sections 29 and 30, recognizes a distinction between Board orders requiring the payment of money and other orders. See 46 U.S.C.A. §§ 828, 829; 46 C.F.R. § 201.251 (1958)
 
 
 [8]
 At no point in the first hearing was Flota prevented from putting on any evidence it desired relevant to the issue of violation of the Act. Not until its reply brief before this court did Flota seek to explain with any degree of specificity what facts it would have offered that it did not actually present in the first hearing. Flota argues that if it had known that the question of its violation of the Act was in issue in the first proceeding, it would have then put on certain evidence which it actually put on only in the reparations hearing. The evidence referred to in Flota's reply brief primarily goes to support Flota's contention that Consolo really did not need reefer space on Flota's vessels. This may be relevant to show mitigation of damages. But it would be of doubtful value in justifying Flota's discriminatory refusal to carry bananas for anyone other than the favored shipper. Flota has at no time suggested that it has any other evidence available
 
 
 [9]
 Judge Hand went even further than it is necessary for us to go in this case. He indicated that a company's "status in the carriage of other commodities" was not only relevant, but might be determinative. "[T]here is every reason of declared policy to assume that the term [common carrier] was used to include all those who were to some degree `common carriers.'" 280 F.2d at 792. Cf. Louisville & Nashville R. Co. v. United States, 282 U.S. 740, 51 S.Ct. 297, 75 L.Ed. 672 (1931); Consolo v. Grace Line, Inc., 4 F.M.B. 293 at 300
 
 
 [10]
 Sections 2321-2325 of Title 28 of the Code (formerly contained in the Urgent Deficiencies Act), and a number of cases cited by Consolo, such as Brady v. Interstate Commerce Commission, 43 F.2d 847, 852 (N.D.W.Va.1930), aff'd per curiam on other grounds, 283 U.S. 804, 51 S.Ct. 559, 75 L.Ed. 1424 (1931), deal largely with the procedural question whether a reparations order of the Interstate Commerce Commission is reviewable by a three-judge district court or a single judge court. Cf. United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). Congress, in passing the Hobbs Act, could hardly have intended to retain this distinction, with respect to Maritime Board orders. We note, also, that Section 31 specifically refers to suits to "enforce, suspend, or set aside" Board orders; the Hobbs Act adds to this by including suits to determine the validity of such orders, but subtracts from it by omitting any reference to their enforcement
 
 
 [11]
 We do not, of course, wish to minimize the res judicata effect of our decision. See In re Federal Water & Gas Corp., 188 F.2d 100 (3d Cir. 1951), cert. denied sub nom. Chenery Corp. v. Securities and Exchange Commission, 341 U.S. 953, 71 S.Ct. 1018, 95 L.Ed. 1375 (1951). Our determination of the issues dealt with in No. 15,330, for example — such as the issue as to whether or not Flota violated the Act — is undoubtedly binding on Flota and the other parties. Flota chose to come to this court — it cannot reject our decision
 
 
 [12]
 For similar reasons, we reject Flota's argument that the Board's award of interest on "amounts unpaid after 60 days," from March 30, 1961, was erroneous
 
 
 [13]
 Flota also argued that the Board misconstrued its function vis-a-vis the Examiner. The statement of the Board upon which this connection is based has been taken out of context as quoted in Flota's brief. Neither other statements by the Board nor its actions will support Flota's claim in this regard. The argument that Consolo's claim for reparation was untimely is similarly without merit
 
 
 [14]
 The Board also noted Flota's exception No. 16 to the Examiner's failure to make a finding of competition between Consolo and Panama Ecuador. The Board found that "the 16th exception is unsupported by the record."
 
 
 [15]
 Flota clearly indicated at the first hearing that it would obey any order rendered by the Board. Flota upon the issuance of the Board's order complied with it. Thus, a prompt declaratory order would have served a primary purpose envisaged for it under the Administrative Procedure Act — to assist a party in governing its conduct without rendering itself liable to suit. See Administrative Procedure Act § 5(d), 5 U.S.C.A. § 1004(d). The result here is that the Board is making Flota pay reparations for the period of the Board's delay
 
 
 [16]
 The Board's holdings as to its delay in rendering a declaratory order, and as to the Panama Ecuador contract, were in effect conclusionary rejections of Flota's arguments. The Board answered Flota's contention that the law was unsettled by assuming that the law was settled by the Grace Line cases, a doubtful assumption at that stage. Finally, the Board felt that the operational difficulties of multiple loadings could be overcome by "the ingenuity of practical men." But Flota suggests that later events have shown that the Board was mistaken
 
 
 [17]
 Section 22 of the Shipping Act provides only that the Board "may" direct the payment of reparation. 46 U.S.C.A. § 821
 
 
 [18]
 We have concluded that the Board could properly find after the first hearing that Flota had violated the Act. But this does not mean that the circumstances of its violation could not be examined at the second hearing in an effort to reach a fair conclusion as to whether any reparations should be assessed
 
 
 [19]
 Our disposition of the case makes it unnecessary for us, at least at this time, to consider the remaining issues raised on this appeal. Thus, should the Board decide, on remand, that a different measure of reparations is warranted, Flota's arguments as to the calculation of damages might be rendered moot