**FLOTA MERCANTE GRANCOLOMBIANA, S. A., Petitioner,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents,**

**Philip R. Consolo, Intervenor.**

**Philip R. CONSOLO, Petitioner,**

v.

**FEDERAL MARITIME COMMISSION and United States of America, Respondents,**

**Flota Mercante Grancolombiana, S. A., Intervenor.**

Nos. 18230, 18235.

United States Court of Appeals District of Columbia Circuit.

Feb. 7, 1967.

Petition for Rehearing Denied March 23, 1967.

---

Messrs. Odell Kominers and J. Alton Boyer, Washington, D. C., were on the brief for Flota Mercante Grancolombiana, S. A.

Messrs. Robert N. Kharasch, William J. Lippman and Mrs. Amy Scupi, Washington, D. C., were on the brief for Philip R. Consolo.

Asst. Atty. Gen. Donald F. Turner, Messrs. Robert N. Katz, Sol., Walter H. Mayo, III, Atty., Federal Maritime Commission, and Irwin A. Seibel, Atty., Dept. of Justice, were on the brief for respondents.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT, Circuit Judge.

BAZELON, Chief Judge:

This litigation is before us for the third time.[1] The first time we upheld the Federal Maritime Commission's determination that Flota Mercante Grancolombiana (Flota) was a common carrier of bananas between Ecuador and the United States, and that, by entering into a forward booking contract for all of its banana space with another shipper, Flota had unjustly and unreasonably refused to supply space on its ships to

1. See our prior opinions in Flota Mercante Grancolombiana v. Federal Maritime Commission, 112 U.S.App.D.C. 302, 302 F.2d 887 (1962), and 119 U.S.App.D.C. 345, 342 F.2d 924 (1964).

Consolo.[2] We also concluded that the Commission acted within its discretion in denying prejudgment interest to Consolo, in starting the reparations period at the time when Consolo first requested an allocation of space from Flota, in selecting the percentage allotment of space to which Consolo would have been entitled for the purpose of computing the reparations award, and in finding that Consolo and the favored shipper were competitors. We remanded the case to the Commission, however, to determine upon more thorough consideration whether the circumstances made a reparations award of any kind inequitable. We based this remand to consider the "cumulative equities" partially upon the following factors: The law defining Flota's obligations was unsettled; Flota was justifiably uncertain whether differences in its ships put it in a different category from other banana carriers; And there seemed to be extensive delays by the Commission in acting upon Flota's request for a declaratory judgment.

On remand the Commission affirmed its original action, and upon review we again reversed. The Supreme Court granted certiorari, however, 381 U.S. 933, 85 S.Ct. 1764, 14 L.Ed.2d 698, and ruled that the Commission's decision to award reparations was supported by substantial evidence.[3] The Court remanded the case to us for further proceedings in accordance with its ruling. Supplemental briefs were filed in this court on the questions undecided by the Supreme Court, i. e., those relating to the Commission's computation of the reparations award. We now affirm the Commission.

### The Reparations Standard.

■■■ The Commission determined that the underlying standard for reparations awards in cases involving a carrier's refusal to transport goods is the difference between the value of the goods at the point of tender and their value at destination, minus the cost of carriage. Pursuant to this formula, it computed the gross profit a shipper would have made on all shipments of bananas carried by Flota during the reparations period, and subtracted freight and incidental expenses. It then determined the percentage of space Consolo would have been entitled to during the reparations period, and awarded that percentage of this net profit figure to Consolo.

Flota claims this standard is inappropriate. Although it recognizes that we have already upheld the Commission's finding of competition between Consolo and the favored shipper, it contends that reparations must be based upon a showing of how much worse off the discriminatorily treated shipper is as a result of the discrimination, and not upon a calculation of how much better off he would have been had he not been discriminated against.[4]

■■ We do not believe that the cases Flota cites—involving discriminatory rates among shippers—are apposite to a case in which the harm done to the shipper inheres in his inability to get his goods to the market, and we think the Commission applied the proper standard. The shipper's lost profits are the normal measure of damages in cases involving a refusal to carry,[5] and the Supreme Court affirmed this principle in its rejection of our prior conclusion re-

2. This was a violation of Section 14 Fourth and Section 16 First of the Shipping Act of 1916. See 46 U.S.C. § 812 and 46 U.S.C. § 815 (1964).

3. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

4. Flota cites several discriminatory rate cases in support of this proposition. See, e. g., Interstate Commerce Commission v. United States, 289 U.S. 385, 389–390, 393, 53 S.Ct. 607, 77 L.Ed. 1273 (1933); West Indies Fruit Co. v. Flota Mercante Grancolombiana, 7 F.M.C. 66 (1962).

5. See, e. g., Territory of New Mexico ex rel. McLean v. Denver & R.G.R. Co., 203 U.S. 38, 48–49, 27 S.Ct. 1, 51 L.Ed. 78 (1906); Roberto Hernandez, Inc. v. Arnold Bernstein Schiffahrtsgesellschaft, M. B.H., 116 F.2d 849 (2d cir.), cert. denied, 313 U.S. 582, 61 S.Ct. 1101, 85 L.Ed. 1539 (1941).

garding the equity of giving Consolo his lost profits in the circumstances of this case:

> [W]e think the court below wrongly minimized the sting of losing expected profits resulting from being unjustly discriminated against and illegally denied shipping space. Such a loss is real and it is certainly compensable under the Shipping Act. (383 U.S., at 626, 86 S.Ct. at 1029.)

*The Reparations Period.*

The Commission calculated the reparations period to begin on August 23, 1957, when Consolo first made a request for an allocation of space on Flota's ships, and to end on July 12, 1959, when its order forcing Flota to accept shipments of bananas as a common carrier became effective. We have already held that Consolo would not be entitled to an earlier date for the beginning of the period, because before then he was bidding along with the favored shipper for exclusive use of the reefer space, and not for a share of it.

■ Flota contends, however, that Consolo's request for space on August 23, 1957, was not specific enough to justify using that date as the beginning of the reparation period. It was not until October 21, 1957, that Consolo requested a specific quantity of space to be given by November 15, 1957. Thus, Flota contends the period should not begin until either of these latter two dates. We think that the request made on August 23 was specific enough to alert Flota to its obligation to Consolo, and its subsequent refusal entitles the Commission to conclude that it would not have given him space at that time. While this date might not be the only appropriate one the Commission could have chosen, it was not an abuse of discretion to select it. The Board's choice of a beginning date is consonant with its selection of a date to conclude the reparations period. The concluding date was not based upon the time when Consolo actually arranged to have bananas on a Flota ship, but rather upon when he could have done so. Under Flota's theory, the concluding date would also have to be extended.

■ Flota further contends that the reparations period should not have begun until January, 1959, because it was then that it had a full fleet of new ships carrying bananas on the relevant route. We earlier upheld the Commission's finding that there was no significant difference between Flota's new vessels and others plying the banana trade, and we held that the new vessel limitations would not at any rate justify discrimination.[6] This same conclusion is applicable to the older vessels in use during the reparations period. The vessels were capable of being used for banana carriage, they were so used by the preferred shipper, and Consolo was not allowed space even though he desired it. The gravamen of Flota's offense was its failure to accede to that desire.

■ Finally, Flota contends that the period should be shortened to take account of the delay by the Federal Maritime Commission in setting its request for a declaratory judgment on the docket, and of further delay caused by Consolo. This argument was part of Flota's argument on the "cumulative equities" issue which the Supreme Court rejected:

> Nor do we feel the record reveals the reparation award is inequitable because Flota asked for declaratory relief or because that request was pending before the Board for almost two years. * * * Further, although Flota's suit was pending for about two years, the record indicates that much of the delay involved in this case was at the request or approval of Flota. At any rate, it has never been the law that a litigant is absolved from liability for that time during which his litigation is pending. 383 U.S., at 624–625, 86 S.Ct. at 1029.

We think this also applies to the issue of the reparations period.

---

6. 112 U.S.App.D.C., at 307; 302 F.2d, at 892. See also 383 U.S., at 624, 36 S.Ct. at 1018.

*The Computation of the Reparations Award.*

■ Flota first argues that the Commission relied on the wrong cost figures as to the bananas. The Commission employed the figures introduced by Consolo showing the cost at which he purchased bananas in Ecuador. Although the record is not totally clear on the point, there is evidence that Puna, from which Consolo shipped, and Guayaquil, from which Flota sails, are only a short distance apart, that some of Consolo's banana sources are nearer to Guayaquil than Puna, and that shipping from Guayaquil would not have cost more. Flota had ample opportunity to introduce evidence suggesting different cost figures, but it did not do so. We conclude that the Commission could reasonably rely upon the evidence before it, and that its conclusions were justified. Flota subsequently attempted— during the remand hearing to determine the cumulative equities issue we had raised—to reopen the evidentiary record, so that it could supply additional evidence on this point. The Commission's refusal was not an abuse of discretion; Flota had had its opportunity, and was not entitled as a matter of law to a second chance. Interstate Commerce Commission v. Jersey City, 322 U.S. 503, 514– 515, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm., 110 U.S.App.D.C. 339, 293 F.2d 527, cert. denied, 368 U.S. 940, 82 S.Ct. 377, 7 L.Ed.2d 339 (1961).

■ Flota and Consolo both challenge the freight cost figure adopted by the Commission. The Commission originally adopted the freight figure that Flota charged to the favored shipper during the reparations period. During the hearing on our remand to the Commission, however, it concluded that Flota would probably have charged more when its entire space was divided among several shippers than when loading for only one shipper was involved. Accordingly, the Commission adopted the same procedure for determining freight cost that it had used, with our approval, in determining what share of the space to allocate to Consolo; it adopted the actual freight cost charged to consolo after Flota began to carry Consolo's bananas, just as it had decided that the share of space to which Consolo would have been entitled during the reparations period would be best reflected by the share of space he actually got after that period. We find this choice of freight costs to be within the Commission's discretion and supported by substantial evidence. Consolo's argument that this was too speculative is met, we think, by the Commission's determination that handling and loading for more than one shipper is more difficult and time consuming. Its choice of a figure actually reflecting that situation is a sound one.

■ Flota, however, contends that the Commission also should have included within this computation the "minimum guarantee portion" of the rate structure; a rate per cubic foot on all shipments in which a given percentage of the available space is not used. This rate, if applied to shipments during the reparations period in which the space was not used, would result in a substantial increase in the freight cost, and a subsequent reduction in the award. The Commission argues that use of this rate would be too conjectural, since the size and operation of the minimal guarantee portions of the rate are dependent upon relative bargaining positions of the parties and the state of the competitive market. We agree that it would be difficult to apply this rate back into the reparations period; indeed, during the period when Flota was carrying only for the favored shipper, adjustments in the agreed upon minimum rate guarantee were negotiated from time to time. What the bargaining position of Flota and Consolo might have been is a question that cannot be answered by objective standards, and the Commission correctly chose to disregard it.

■ We also find the figures as to stevedoring rates to be supported by the record. The only figures available, other than the ones adopted, were suggested

by Flota; the rate charged to Consolo when he shipped his bananas to New York on Grace Line vessels, rather than to Philadelphia on Flota ships. The Board correctly rejected these rates and chose to adopt the rates proven by Consolo as to part of the period, and estimated by Consolo's accountant as to the remainder of the period. Consolo argues that the Commission should have applied to the entire period the rate it proved for part of the period, absent any indication of change. While there is force to this argument, we cannot say that it was outside of the Commission's discretion to refuse to do so and to adopt instead the estimated figures of Consolo's accountant.

*Mitigation of Damages.*

Flota finally argues that Consolo failed to mitigate damages, a factor which the Commission should have taken into account in determining the amount of reparations. The Commission concluded, properly, that the burden of proof on these issues is on Flota,[7] and we think the record supports a conclusion that Flota did not meet its burden.

Flota contends that Consolo's space on the Grace Line vessels was not used at all by him, but by another company in which he was a minority stockholder. But Flota did not show, in the face of evidence that many banana traders operate through separate purchasing and shipping corporations, that in fact Consolo's arrangement with Dover Banana Company was different. There was evidence to indicate that, although separate corporations were involved, they were shipping Consolo's bananas.

Flota next contends that, even as to shipments carried on the Grace Line ships, Consolo did not use all of the space available to him. The trial examiner held adversely to Flota on this issue, and the Commission agreed with him. Fluctuation in the number of bananas is an industry-wide characteristic, dependent upon market conditions, as well as the size and weight of the bananas. We are not convinced that there were strong market periods in which Consolo alone was failing to use all his space, and we uphold the Commission's conclusion that Consolo's failure to use space occurred in periods in which the other shippers were failing to use theirs.

Our conclusion is bolstered by the fact that the Commission's computation of reparations took into account industry-wide fluctuations in banana shipments. By adding in all voyages whether profitable or not to the favored shipper in determining gross profit, the Commission reduced substantially the likelihood that Flota would be charged for periods in which Consolo would not have been able to ship a full load, since most often the favored shipper's inability came at a time when Consolo also would not have been able to ship.

We also reject Flota's argument that Consolo should have mitigated his damages by shipping on chartered vessels, or by shipping on the Chilean Line. The Commission concluded that Flota had not met its burden of showing that Consolo could afford to charter entire ships for extended periods, when all he wanted was part of Flota's space. There is evidence that Consolo did not continue to use Chilean Line ships because of that line's space commitments elsewhere during lengthy periods, and we also find supported the Commission's refusal to reduce the reparations by the amount of stems Consolo actually did manage to ship on the Chilean Line. Flota did not sufficiently negate the possibility that Consolo could have used *both* Chilean Line *and* Flota vessels for this brief period.

*Award of Interest.*

Consolo attacks on several grounds the Commission's award of interest running only from the date of its modified second order of reparations. The Shipping Act explicitly gives the Commission discretion in the award of

7. See Hernandez v. Bernstein, *supra* note 5, 116 F.2d at 852.

full reparations,[8] and the Supreme Court has indicated that there are numerous bases on which an award of reparations may be made.[9] We hold, as we held previously, that the award of interest is discretionary, and that none of the cases cited by Consolo demonstrates that this discretion was violated by the Commission. We realize that the Commission changed the date at which interest should begin to run after we had approved of the original date. But in that proceeding, the Commission also reduced the size of the award, and made a thorough examination of the record. We merely held previously that the Commission had not abused its discretion in its original award, and we do not see any reason for saying now that the change constituted an abuse.

Consolo, however, says that in a case,[10] decided after our original decision regarding interest, we held an award of interest mandatory. We do not read that decision as Consolo does. There, the court pointed out that the *reason given* for the failure to afford interest was not supported by the evidence in the record. It rested its statement that interest is awarded as a general matter on Louisville & N. R. Co. v. Sloss-Sheffield Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242 (1925), which is the very case we read as making interest awards discretionary. We see nothing to require us to change our original view.

We are satisfied, after a thorough review of the record, the Commission's opinions, and the briefs of the parties, that the Commission made every effort to set the reparations figure at a level that would be fair to both of the parties. Mathematical precision in such a case is impossible, especially when an agency is hemmed in by the material in the record before it. While we may not have decided all of the issues as the Commission did, we find no basis for disturbing its views. The final award reflects the careful consideration of many factors and a concern for the interests of the parties. We are satisfied that the award rests upon a sufficient evidentiary base and reflects a proper exercise of agency discretion.[11]

Affirmed.

8. 46 U.S.C. § 821 (1964).

9. 383 U.S., at 622, 86 S.Ct. 1018, 16 L.Ed. 2d 131.

10. States Marine Lines, Inc. v. Federal Maritime Commission, 114 U.S.App.D.C.

225, 313 F.2d 906, cert. denied, 374 U.S. 831, 83 S.Ct. 1872, 10 L.Ed.2d 1054 (1963).

11. Circuit Judge Wright did not participate in the foregoing decision.